OPINION
{¶ 1} Defendant-appellant, Tremain McIntosh, appeals his convictions in the Butler County Court of Common Pleas and his subsequent sexual predator designation. We affirm the decision of the trial court.
 {¶ 2} In October 2005, McIntosh was indicted on two counts of felonious assault, two counts of domestic violence, and one count of rape. The charges stemmed from a course of events occurring in August and September 2005 between McIntosh and the victim, who is *Page 2 
also the mother of his child.
 {¶ 3} According to the facts presented at the plea hearing, on August 29, 2005, McIntosh stabbed the victim in the neck with a knife after a domestic dispute. On September 8, 2005, after another incident, McIntosh severely beat the victim and anally raped her.[1]
 {¶ 4} After his indictment, McIntosh pled not guilty and his counsel filed motions for discovery and a bill of particulars. Soon thereafter, McIntosh retained different counsel who later filed duplicate motions for discovery and a bill of particulars, as well as a jury request for the scheduled trial. However, before the trial commenced, McIntosh entered into a plea agreement and waived his request for a jury trial. During the January 17, 2006 plea hearing, McIntosh entered guilty pleas to each of the charges and the court accepted the plea after determining that McIntosh made his plea knowingly, intelligently, and voluntarily. The court then ordered a presentence investigation and set the sexual classification and sentencing hearing for February 22, 2006.
 {¶ 5} On the date of the classification and sentencing hearing, McIntosh's counsel arrived late and then told the court that McIntosh had just informed him that he wanted to withdraw his plea because he was not guilty of the charges. Because there was no formal motion to withdraw the plea, the trial court proceeded with the hearing and sentenced McIntosh to an aggregate sentence of ten years[2] and designated him a sexual predator. *Page 3 
After the court made its ruling, McIntosh filed a notice of appeal to this court on March 8, 2006.[3] In June 2006, McIntosh filed a petition for postconviction relief with the trial court, claiming that it failed to give notice of the sexual offender classification hearing and that his trial counsel was ineffective. The court denied McIntosh's petition, holding that it did provide the requisite notice for the classification hearing and that McIntosh's ineffective assistance of counsel claim was precluded by res judicata. McIntosh then filed another notice of appeal to this court in October 2006.[4]
 {¶ 6} In April 2007, McIntosh filed another motion for postconviction relief based on newly discovered evidence that his trial counsel had admitted to being a drug addict and was in the process of being investigated by the disciplinary committee for multiple violations of Ohio's professional code of responsibility. In May 2007, the court denied the petition and McIntosh filed another notice of appeal. This court then consolidated McIntosh's pending appeals and now addresses his three assignments of error.[5]
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE DEFENDANT-APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 9} In his first assignment of error, McIntosh argues that he received ineffective assistance of counsel before and after his plea and sentencing hearings. This argument lacks merit. *Page 4 
 {¶ 10} The Sixth Amendment pronounces an accused's right to effective assistance of counsel. Warning against the temptation to view counsel's actions in hindsight, the Supreme Court stated that judicial scrutiny of an ineffective assistance claim must be "highly deferential * * *."Strickland v. Washington (1984), 466 U.S. 668, 689, 104 S.Ct. 2052.
 {¶ 11} Also within Strickland, the Supreme Court established a two-part test which requires an appellant to establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." State v. Myers, Fayette App. No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing Strickland.
 {¶ 12} Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.[6] Because an appellant must prove both prongs, a reviewing court need not address the deficiency issue if the appellant was not sufficiently prejudiced by counsel's performance. Id. at 697.
 {¶ 13} Specifically, McIntosh argues that he received ineffective assistance because his counsel failed to provide meaningful representation during the pretrial and pre-plea phase by only filing duplicate requests for discovery and a bill of particulars. Further, McIntosh asserts that counsel was ineffective because counsel failed to make a formal motion to withdraw his guilty plea before the sentencing hearing and did not pursue one when the trial court indicated that without a formal motion, it would proceed with sentencing. McIntosh also *Page 5 
argues that his counsel was ineffective because he did not offer any mitigation arguments before the court sentenced McIntosh to the maximum penalty provided by statute. McIntosh asserts generally that counsel's entire preparation was tainted by his ongoing addiction to narcotics.
 {¶ 14} Even if these errors amounted to deficiency as required by the first prong of Strickland, to satisfy the second prong of the test, McIntosh must show that the outcome of which he complains would have been different but for his counsel's actions. Specifically, McIntosh would need to show that had counsel's performance been effective, he would not have pled guilty, that the trial court would have granted a motion to withdraw his guilty plea, and that the trial court would have sentenced him otherwise based on mitigating factors.
 {¶ 15} We note initially that most of McIntosh's arguments center on information that was not available to the trial court when it made its decision to deny postconviction relief based on McIntosh's ineffective assistance argument.[7] See App. R. 12(A)(B)(1) (requiring a reviewing court to determine the appeal on its merits based on the appellant's assignments of error, the record on appeal, and any oral argument before the appellate court). Specifically, McIntosh's brief is replete with references to trial counsel's unprofessionalism and a pending action by the Office of Disciplinary Counsel[8] and the Cincinnati Bar Association. McIntosh also attached an article in which trial counsel gave an interview to a Cincinnati newspaper *Page 6 
chronicling his rise and fall in the legal world and his debilitating dependence on drugs.
 {¶ 16} The trial court, in its denial of McIntosh's motion for postconviction relief, held that McIntosh's assertion regarding ineffective assistance of counsel could have been raised on direct appeal and was therefore barred by res judicata. See State v.Szefcyk, 77 Ohio St.3d 93, 1996-Ohio-337. However, an exception to this rule exists where a defendant raises a claim of ineffective assistance of counsel and relies on material dehors the record.
 {¶ 17} Nonetheless, even if the record had contained this information at the time the trial court made its decision to deny postconviction relief, McIntosh does not argue that he would not have pled guilty had his trial counsel done any preparation work other than filing duplicate motions for discovery and a bill of particulars. Additionally, the record does not indicate that had counsel performed any differently that McIntosh would have gone to trial instead of entering a plea. Instead, McIntosh merely asserts that the pre-plea phase was tainted because counsel's addiction to drugs reached its height during the time he represented McIntosh. The record before this court demonstrates that counsel showed up late to hearings and did not file anything other than two gratuitous motions, and had addiction and pending disciplinary issues. Still, McIntosh does not demonstrate that absent counsel's addictions, he would not have pled guilty.
 {¶ 18} In exchange for his plea, the trial court agreed to sentence McIntosh to concurrent sentences so that the ten-year aggregate sentence was imposed instead of a possible sentence of over 24 years had a jury found him guilty and had the court sentenced McIntosh to maximum consecutive penalties. McIntosh's brief to this court, as well as the record before the trial court, fails to demonstrate that McIntosh had reason to go to trial and was otherwise prejudicially led to a guilty plea because of counsel's addiction. Therefore, even in the face of any deficiency that may have arisen from counsel's addiction, McIntosh *Page 7 
has failed to show that he would not have pled guilty had counsel's performance been any different than it was.
 {¶ 19} McIntosh is also unable to show that but for his counsel's actions, he would have been permitted to withdraw his guilty plea. Crim. R. 32.1 permits a defendant to move the court to withdraw a guilty plea once a court has accepted it. We note initially that McIntosh made an oral motion to withdraw his plea at the beginning of the sentencing hearing.[9] Although an oral motion is adequate, [10] the court did not treat McIntosh's request to withdraw his plea as a formal motion.[11] While the court did not offer McIntosh a chance to be heard on his motion and did not otherwise consider it beyond mentioning that there was not a formal motion before the court, [12] McIntosh fails to raise this issue on appeal. Instead, McIntosh's entire assignment of error asserts an ineffective assistance of counsel argument, claiming that his counsel was deficient in not filing a motion to withdraw his guilty plea and/or for not requesting a continuance from the court so that he could have filed a formal motion. Therefore, because McIntosh's assignment of error does not specifically challenge the legitimacy of the trial court's denial of counsel's oral Crim. R. 32.1 motion, McIntosh has waived any error pertaining to the oral motion other than his counsel's effectiveness.
 {¶ 20} Though it is undisputed that trial counsel failed to make a written motion to *Page 8 
withdraw McIntosh's guilty plea and did not request a continuance to afford time for filing such a motion, nothing in the record indicates that the trial court would have granted it.
 {¶ 21} In order to withstand scrutiny under the United States and Ohio Constitutions, a defendant's guilty plea must be made knowingly, intelligently, and voluntarily. State v. Engle, 74 Ohio St.3d 525,1996-Ohio-179. Crim. R. 11(C)(2) provides the procedure a trial court must follow when accepting a guilty plea in a felony case. State v.Todd, Clermont App. No. CA2003-02-012, 2003-Ohio-6786. The rule "was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." State v. Nero (1990), 56 Ohio St.3d 106, 107.
 {¶ 22} As relevant to the issue presented in this case, the applicable language of the rule declares that, "in felony cases the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:
 {¶ 23} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim. R. 11(C)(2)(a).
 {¶ 24} In addition, Crim. R. 11(C)(2)(c) requires that the defendant be made aware of and waive his constitutional rights including his Fifth Amendment privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront his accusers. Nero.
 {¶ 25} Although a presentence motion to withdraw a guilty plea should be freely and liberally granted, "it must be recognized that a defendant does not have an absolute right to *Page 9 
withdraw a plea prior to sentencing." Xie, 62 Ohio St.3d at 527. When making its decision regarding a motion to withdraw, the trial court may take into consideration whether or not the defendant was afforded a complete Crim. R. 11 hearing before entering his plea. State v.Moore, Butler App. No. CA2006-01-016, 2006-Ohio-6353.
 {¶ 26} Here, the record indicates that the trial court afforded McIntosh a complete Crim. R. 11 hearing. While McIntosh does not overtly claim that his plea hearing produced a plea that was not knowingly, voluntarily, or intelligently made, the fact that McIntosh later expressed a desire to withdraw his plea indicates that he challenged the validity of his plea. However, at the plea hearing, the record is clear that the trial court explicitly detailed McIntosh's right to remain silent, to have a jury hear his case, to have the state prove his guilt beyond a reasonable doubt, to subpoena witnesses to court, and to confront his accusers. McIntosh acknowledged that he understood his constitutional rights and then waived them.
 {¶ 27} The court also addressed McIntosh's non-constitutional rights and explained the implications of his plea and the rights he was waiving. Specifically, the trial court walked McIntosh through each of the five counts against him, explaining what each count entailed, its maximum penalty, and if fines were involved. The court then verified that McIntosh could read, write, and understand the English language before advising McIntosh that he would go through a sexual offender classification and be subjected to post-release control. The court also discussed the fact that it had agreed to impose a concurrent sentence and then confirmed that no other representations were made to compel McIntosh to plea. The following exchange then occurred:
 {¶ 28} "The Court: You have had an opportunity to consult with your attorney * * * is that correct?
 {¶ 29} "The Defendant: Yes *Page 10 
 {¶ 30} "The Court: And you are satisfied with his advice; is that correct?
 {¶ 31} "The Defendant: Yes.
 {¶ 32} "The Court: The law says you must knowingly, intelligently and voluntarily give up your rights and enter a plea of guilty of your own free will. Is that what you are doing today?
 {¶ 33} "The Defendant: Yes.
 {¶ 34} "The Court: The Court will accept the plea and hear a statement of the facts."
 {¶ 35} The state then presented the facts of the case and gave McIntosh the chance to comment. Once McIntosh declined to make any additional comments, the trial court scheduled the disposition hearing and concluded the hearing. After reviewing the record, it is clear that the court fulfilled its duty under Crim. R. 11 and McIntosh's plea was made voluntarily, knowingly, and intelligently.
 {¶ 36} Another factor a trial court may consider when faced with a motion to withdraw a guilty plea is whether the defendant understood the nature of the charges and possible penalties before he pled guilty.Moore, Butler App. No. CA2006-01-016. "A change of heart or mistaken belief about pleading guilty is not a reasonable basis that requires a trial court to permit the defendant to withdraw his guilty plea."State v. Eversole, Erie App. Nos. E-05-073, E-05-076, E-05-074, E-05-075, 2006-Ohio-3988, ¶ 13.
 {¶ 37} Here, the trial court explained each of the charges to McIntosh and the possible penalties involved. Throughout the court's colloquy, it repeatedly stopped to ask McIntosh if he understood what the court was saying and invited him to ask any questions. The court also told McIntosh, "if at any point during our conversation you are unsure of how to proceed, * * * stop me so I can review your rights with you in more detail or if necessary, I can recess the hearing, which means I can stop the hearing and you can talk privately to your attorney. *Page 11 
Do you understand that?" After McIntosh answered that he did, the court continued. McIntosh never stopped the court to ask any questions, to express any reservations regarding his decision to plead guilty, or to proclaim his innocence. After hearing each charge, the maximum sentence for each, what fines were involved, and the mandatory sexual classification hearing and imposition of post-release control that would follow his plea, McIntosh pled guilty. Between the day of his plea hearing, January 17, 2006, and the sentencing hearing on February 22, 2006, McIntosh did not inform the court or his counsel that he wished to withdraw his plea. At the sentencing hearing, McIntosh offered no reason as to why he wanted to suddenly change his plea and the record does not indicate that his decision to do so was anything more than a change of heart.
 {¶ 38} While considering the request to withdraw a guilty plea, the trial court could have also considered whether the defendant was possibly not guilty of the charges or had a complete defense to the charges. State v. Moore, Butler App. No. CA2006-01-016, 2006-Ohio-6353.
 {¶ 39} Here, the record indicates that the state's case against McIntosh was very strong. In addition to the victim's testimony, the state was prepared to enter into evidence photographs of the victim's extensive injuries, the rape kit taken by the nurse and doctor who treated the victim after she went to the hospital, as well as other medical documentation of the victim's injuries. The state also had forensic evidence which included the victim's blood found on the wall and blinds in the bedroom where part of the assault occurred, as well as on a belt buckle McIntosh used to beat the victim. The court also ordered a presentence investigation report which chronicled McIntosh's prior criminal history, including multiple charges of domestic violence, felonious assault, and gross sexual imposition. However, the record is devoid of any indication that McIntosh had a defense to the five counts for which he *Page 12 
pled guilty and there is nothing to signify McIntosh's innocence other than his statement at the sentencing hearing.
 {¶ 40} After reviewing the record, there is no reasonable possibility that had McIntosh's counsel made a written or more formal motion to withdraw the guilty plea that the court would have granted it. Because McIntosh is unable to show that he was prejudiced by counsel's inaction, he has failed to fulfill the second prong of the Strickland test and we cannot say that his counsel was ineffective.
 {¶ 41} McIntosh further claims that his counsel was ineffective because he failed to offer any mitigation arguments before the court sentenced him to an aggregate sentence of ten years.[13] However, even if counsel's failure to offer mitigating arguments amounted to deficiency under Strickland, we are unable to say that McIntosh was prejudiced because nothing on the record indicates that the trial court would have sentenced McIntosh any differently than it did had counsel offered mitigating circumstances.
 {¶ 42} McIntosh does not specifically state why or how he was prejudiced. The court heard the facts of the case, as accepted and admitted to by McIntosh when pleading guilty to the charges, the presentence report by the adult probation department, and a narrative report by Dr. Bobbi Hopes. Additionally, the court had the victim's impact statement in which she conveyed the details of the assault and rape. The court then pointed out that the offenses were violent and sexual in nature and that McIntosh was in a position of trust because he was in a relationship with the victim and was the father of her child.
 {¶ 43} Considering the evidence before the trial court, including the brutality of the assault and rape, nothing indicates that trial counsel could have done anything differently to change the outcome of sentencing. McIntosh is unable to show prejudice by counsel's *Page 13 
decision to not offer mitigating arguments, and cannot now claim that his counsel was ineffective.
 {¶ 44} Having found that McIntosh did not demonstrate that he would not have pled guilty, that the trial court would have granted a formal motion to withdraw the guilty plea, or that mitigation arguments would have resulted in a different sentence, McIntosh has failed to prove that he received ineffective assistance of counsel and his first assignment of error is therefore overruled.
 {¶ 45} Assignment of Error No. 2:
 {¶ 46} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT PROVIDE HIM WITH THE OPPORTUNITY TO BE HEARD AT THE SEXUAL PREDATOR HEARING."
 {¶ 47} In his second assignment of error, McIntosh asserts that the trial court did not provide him with a meaningful opportunity to be heard before classifying him a sexual predator. This argument is unpersuasive.
 {¶ 48} According to R.C. 2950.01(E), [14] a sexual predator is a person who has been convicted of or has pled guilty to committing a sexually-oriented offense and is likely to engage in one or more sexually-oriented offenses in the future. A court is required to hold a sexual classification hearing and at the hearing, the "offender * * * and the prosecutor shall have the opportunity to testify, present evidence, call and examine witnesses and expert witnesses regarding the determination as to whether the offender * * * is a sexual predator." R.C. 2950.09(B)(2).
 {¶ 49} While McIntosh claims that he was denied a meaningful hearing, the record *Page 14 
indicates otherwise. During the hearing, the trial court commenced the sexual classification portion by stating that it had reviewed the reports of Dr. Bobbi Hopes and the probation department. The court then referenced statutory factors a court is to take into consideration when determining the classification of a sexual offender, [15] and then noted that the offense was violent in nature and that it involved the "beating and torture of the victim" so that a sexual predator designation was proper. See State v. Gooden, Cuyahoga App. No. 81320, 2003-Ohio-2864 (reversing the decision of the trial court because it failed to discuss the evidence and factors on which it based its decision to classify the appellant as a sexual predator during the hearing). The court then explained the consequences of such designation and then asked McIntosh if he understood what the court decided, to which McIntosh indicated that he did. Counsel then noted McIntosh's objection to the court's findings but did not state that he wished to be heard in any other manner.
 {¶ 50} After the state presented paperwork which McIntosh was to sign, counsel approached and had a conference with the court. During the conference, counsel verified the information necessary to fill out the paperwork and then stepped back without ever suggesting that McIntosh intended to offer any evidence regarding his classification. After the paperwork was addressed, the court asked if there was any reason that it could not proceed to sentencing to which counsel responded, "Just note, Judge, I think we are admitting State's Exhibit Number 1, which is Dr. Hopes' record. It was part of the predator *Page 15 
hearing. And with that said, Judge, there is no further reason — there is no other reason why we can't go forward."
 {¶ 51} McIntosh argues that the court denied him a meaningful hearing because the classification portion of the hearing was lost amidst the discussion regarding McIntosh's request to withdraw his plea. However, after reviewing the record, it is clear that the exchange between the court and McIntosh, as well as between the court and counsel, indicates that McIntosh knew the court had considered the classification issue. Further, nothing in the record indicates that the court denied McIntosh an opportunity to offer any evidence or testimony regarding his classification. See State v. Hurst, Montgomery App. No. 20435, 2005-Ohio-128 (affirming the decision of trial court because it properly held a classification hearing by taking evidence, affording counsel an opportunity to present anything, and providing an opportunity to appellant and his counsel to speak).
 {¶ 52} Although McIntosh claims that the court failed to provide a meaningful hearing, the court addressed the statutory factors and then applied the facts, took evidence in the form of a doctor's report, and afforded McIntosh and his counsel an opportunity to speak or present further evidence to the court. Instead of doing so, McIntosh and counsel declined to comment on any aspect of the designation and did not offer any evidence. McIntosh's choice not to present evidence or be heard on the classification does not make the hearing meaningless. Instead, the court fulfilled its statutory duty by affording McIntosh a full and meaningful hearing before adjudicating him a sexual predator so that his second assignment of error is overruled.
 {¶ 53} Assignment of Error No. 3:
 {¶ 54} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT — APPELLANT *Page 16 
WHEN IT IMPROPERLY IMPOSED A MAXIMUM SENTENCE ON HIM."
 {¶ 55} In his final assignment of error, McIntosh asserts that the trial court erroneously sentenced him and that his sentence must be vacated based on State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. This argument lacks merit.
 {¶ 56} Both McIntosh and the state direct this court to vacate the trial court's sentence because it was handed down after the United States Supreme Court decided Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531[16], but before the Ohio Supreme Court handed down its decision in Foster. In Foster, the Ohio Supreme Court severed unconstitutional provisions of Ohio's felony sentencing statutes and held that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." 2006-Ohio-856 at ¶ 100.
 {¶ 57} While the court made clear that its ruling in Foster applied to those cases where the sentencing issue was in the appellate stage, the court later decided that a defendant's failure to object at a sentencing hearing forfeits a Blakely error on appeal. State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642 at paragraph one of the syllabus.
 {¶ 58} In Payne, the appellant never objected to his sentence until he raised a Sixth Amendment argument to the Tenth District Court of Appeals who determined upon reconsideration that Payne had waived hisBlakely argument on appeal. Because there existed conflict among the appellate courts as to whether the failure to object results in waiver, the supreme court certified the conflict and considered whether or not a reviewing court should apply the plain error standard to an appellant's sentence if that appellant did not object to the trial court's sentence as being inconsistent with the Blakely holding. In its *Page 17 
analysis of the issue, the court began by noting that if a "party forfeits[17] an objection in the trial court, reviewing courts may notice only `plain errors or defects affecting substantial rights.'" Id. at ¶ 15, citing Crim. R. 52(B).[18] The plain error standard requires that the burden of demonstrating plain error is on the party asserting it and "reversal is warranted if the party can prove that the outcome `would have been different absent the error.'" Id. at ¶ 17, citingState v. Hill, 92 Ohio St.3d 191, 203, 2001-Ohio-141.
 {¶ 59} The court then noted that pursuant to North Carolina v.Alford (1970), 400 U.S. 25, 91 S.Ct. 160, Payne pled guilty to aggravated burglary, kidnapping, rape, and felonious assault, and received an aggregate sentence of 35 years. It then concluded that because Payne had not preserved his objection, thus failing to assert his rights under Blakely, he had forfeited his right to assert aFoster argument to the appellate court. The court then applied the plain error standard and found that "no plain error occurred. Payne cannot establish that but for the Blakely error, he would have received a more lenient sentence. * * * Payne, therefore, has failed to establish that he was prejudiced by the judicial fact-finding requirements. If Payne were to be resentenced, nothing in the record would hinder the trial court from considering the same factors it previously had been required to consider and imposing the same sentence * * *." Id. at ¶ 25-26.
 {¶ 60} The circumstances surrounding McIntosh's sentencing and appeal present the *Page 18 
same posture as that found in Payne and we will analyze the case at bar accordingly. Blakely was announced prior to McIntosh's hearing, yet he did not make any objection at the time his sentence was imposed. Therefore, McIntosh forfeited the issue for appellate purposes and the plain error standard applies when reviewing the trial court's sentence, just as it did in Payne.
 {¶ 61} Here, reversal is not warranted because McIntosh cannot prove that his sentence would have been different absent the error. WhileFoster prohibits judges from doing any fact finding in order to determine the sentence, McIntosh cannot show that he was prejudiced by the court fulfilling the now-defunct fact-finding requirements. The trial court considered the facts, as admitted to by McIntosh by pleading guilty, as well as the victim impact statement and other presentencing reports, before it determined the proper sentence. The court also adhered to the plea bargain agreement by ordering that McIntosh's sentences for each of his five convictions would run concurrently instead of running consecutively. If McIntosh were to be resentenced, nothing would impede the trial court from considering the same factors it previously had been required to consider and nothing on the record indicates that the terms of the plea agreement would change on remand or that the trial court would sentence McIntosh any differently.
 {¶ 62} We also note that the supreme court has further added to theFoster progeny by setting forth a two-step process by which a reviewing court is to determine the validity of a trial court's sentencing decision. State v. Kalish, Slip Opinion No. 2008-Ohio-4912. InKalish, the court determined that an appellate court must first, "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse of discretion *Page 19 
standard." Id. at ¶ 4. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 63} Regarding the court's compliance with applicable rules and statutes, post Foster, trial courts have the discretion to impose any sentence if it falls within the statutory range for the given offense. Here, McIntosh pled guilty to rape in violation of R.C. 2907.02(A)(2), a first-degree felony. According to R.C. 2929.14, the maximum sentence for a first-degree felony is ten years. Because the sentence adheres to statutory precepts, it is not clearly and convincingly contrary to law. We therefore focus on whether or not the trial court abused its discretion by imposing a ten-year sentence for the rape charge. The court considered that McIntosh brutally assaulted and raped the victim, and that McIntosh had a history of contemptible behavior. The court also considered the victim's statement which detailed the monstrous nature of the attacks and the reprehensibility of the crimes. After considering these factors, the court sentenced McIntosh to the maximum penalty allowed under law and nothing in the record indicates that the court's decision to do so was unreasonable, arbitrary, or unconscionable.
 {¶ 64} Because no plain error exists and the trial court's sentence is otherwise proper under Kalish, McIntosh's third assignment of error is overruled.
 {¶ 65} Judgment Affirmed.
BRESSLER, P.J. and YOUNG, J., concur.
[1] The court heard these sparse facts as presented by the state during the plea hearing. While the record also contains the victim's impact statement detailing the heinous nature of the attacks, we decline to publish those facts not presented in open court.
[2] The trial court sentenced McIntosh to seven years on the first felonious assault charge, seven years on the second felonious assault charge, 180 days for the two domestic violence charges, and ten years for the rape charge. The court then ordered that all counts would run concurrently with each other and gave McIntosh credit for 165 days served. The court also imposed a mandatory five year post-release control sentence.
[3] On September 6, 2006, this court dismissed McIntosh's appeal because he had not filed a brief as was ordered in a July 12, 2006 entry.
[4] McIntosh's counsel withdrew this appeal on July 30, 2007 without informing McIntosh or obtaining his permission to do so. After obtaining new appellate counsel, this court reinstated the appeal on October 8, 2007.
[5] McIntosh's new counsel filed a motion with this court to reinstate his appeal. Because McIntosh never received notice of the trial court's final appealable order denying his second request for postconviction relief, this court determined that McIntosh's appeal was timely because he filed his notice of appeal within 30 days of his actually receiving notice of the trial court's decision.
[6] "The Strickland test was applied to guilty pleas in Hill v.Lockhart (1985), 474 U.S. 52,106 S.Ct. 366. `First, the defendant must show that counsel's performance was deficient.'" State v. Xie (1992),62 Ohio St.3d 521, 524. Second, the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill
at paragraph one of the syllabus.
[7] "An appellant bears the burden of showing error by reference to matters on the record." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. See also State v. Ishmail (1978), 54 Ohio St.2d 402,405-406 (reversing the decision of the appellate court because it relied on a transcript not in the record of the trial court proceedings, and noting that "a reviewing court can only reverse the judgment of a trial court if it finds error in the proceedings of such court, it follows that a reviewing court should be limited to what transpired in the trial court as reflected by the record made of the proceedings").
[8] The Office of Disciplinary Counsel filed a motion for interim remedial suspension because of numerous grievances against counsel "suggesting a [sic] extensive pattern of neglect of client matters, failure to return client funds and property, misuse of IOLTA accounts, conversion of client funds, and failure to properly supervise his office staff."
[9] Trial counsel stated the following to the court during the sentencing and classification hearing: "I spoke with [McIntosh] this morning. And according to the report and according to him, he's maintaining that he is not guilty. I just have to make a record, Your Honor. * * * He stated to me that he wished to at least present to the Court that his position is he is not guilty and would request to withdraw his plea."
[10] See State v. Nicholson, Cuyahoga App. No. 82825, 2004-Ohio-2394
(holding that appellant's oral motion on the day of his sentencing hearing was adequate because such motions need not be written).
[11] The trial court responded to the oral motion to withdraw the plea with the following statement: "Are you telling me now at this point that he is — after we have gone through a plea of guilty, an entire presentence report process and all that that he wishes to withdraw his plea? That is not a formal motion. * * * I mean, I didn't even have a formal motion in front of me other than an indication that he wishes to withdraw his plea. I'm prepared to go forward. * * * So unless there is a formal motion in front of me, the Court will proceed."
[12] See State v. Bowling (March 10, 1987), Montgomery App. No. 9925 (reversing judgment because trial court failed to provide appellant a hearing on the reasons he wanted to withdraw his guilty plea or even consider appellant's oral motion to withdraw his plea at the sentencing hearing).
[13] In accordance with the plea agreement, the court sentenced McIntosh to concurrent sentences, the longest being the maximum ten year sentence for rape.
[14] As of January 1, 2008, sexual predator designation is governed by R.C. 2950.032. References to R.C. 2950 in this decision are to the superseded statute still in effect at McIntosh's 2006 designation.
[15] In determining an offender's likelihood of recidivism, the trial court was to consider all relevant factors as listed in R.C. 2950.09(B)(3) which include the offender's: age, prior criminal or delinquent history, as well as the age of the victim, whether there were multiple victims, whether the offender used drugs or alcohol to impair the victim, whether the offender had a juvenile record, if the offender had a mental illness or disability, the nature of the offender's sexual conduct or if it was part of a demonstrated pattern of abuse, whether the offender displayed cruelty or made threats of cruelty during the commission of the sexual offense, as well as any additional behavioral characteristics that contribute to the offender's conduct. The weight to be given the statutory factors is within the discretion of the trial court. State v. Wells, Butler App. No. CA2006-03-064, 2007-Ohio-42. For that reason, a trial court may rely on one factor more than another and is not required to find that the evidence supports a majority of these factors. State v. Harper, Butler App. No. CA2006-06-132,2007-Ohio-3611.
[16] In Blakely, the United State Supreme Court deemed judicial fact-finding during sentencing unconstitutional unless the defendant had admitted such facts or a jury had found them to be true.
[17] "Waiver is the intentional relinquishment or abandonment of a right, and waiver of a right `cannot form the basis of any claimed error under Crim. R. 52(B)' On the other hand, forfeiture is a failure to preserve an objection * * *. A mere forfeiture does not extinguish a claim of plain error under Crim. R. 52(B)." Payne at ¶ 23, citingState v. McKee, 91 Ohio St.3d 292, 299, 2001-Ohio-41.
[18] The court began by analyzing whether a Blakely error could be considered in plain error terms or if it was so structurally erroneous that the error "permeate[d] the entire framework within which the trial proceeds." Payne at ¶ 18, citing State v. Fisher, 99 Ohio St.3d 127,2003-Ohio-2761. The court concluded that a Blakely error was not structural in nature and instead, determined that it should be analyzed pursuant to Crim R. 52 and the plain error standard set forth therein. *Page 1