[Cite as *State v. Patrick*, 2016-Ohio-995.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                          :

    Plaintiff-Appellee,                 :          CASE NO.   CA2015-05-090

                                        :          O P I N I O N
- vs -                                             3/14/2016
                                        :

DAVID MICHAEL PATRICK,                   :

    Defendant-Appellant.                :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2014-08-1254


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Brandabur & Bowling Co., L.P.A., Jeffrey W. Bowling, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant


**HENDRICKSON, J.**

{¶ 1}   Defendant-appellant, David Michael Patrick, appeals from his conviction and sentence in the Butler Court of Common Pleas for kidnapping, abduction, breaking and entering, and gross sexual imposition.  For the reasons set forth below, we affirm.

{¶ 2}   At approximately 7:00 a.m. on August 14, 2014, M.L. parked her vehicle on the third floor of McDulin parking garage in Hamilton, Ohio.  As M.L. was walking down the stairs

to the second floor, a man came up the steps, pushed her into the stair banister, and put his left hand up her dress to pull on her underwear while grabbing her crotch with his right hand. The assailant used his body to pin M.L. against the banister during the attack. Although M.L. screamed and kicked out at her assailant, she was unable to get away. When an alarm in the parking garage sounded, the man released M.L, causing her to fall, before he fled from the scene.

{¶ 3} Police officers from the city of Hamilton responded to the scene. Officer Chad Stafford interviewed M.L. and obtained a description of M.L.'s assailant. M.L. described her attacker as a white male, approximately 5'9" to 5'11" tall, with thin blonde hair. She stated her attacker was dressed in a blue jacket and blue pants. Stafford released this description of the suspect to other patrol officers. Stafford was contacted shortly thereafter by Officer Justin Boyd, who had encountered appellant walking nearby at the Columbia Bridge. Boyd described appellant as a 5'6" or 5'7" skinny male wearing a black pair of shorts, black shoes, and no shirt. Stafford drove M.L. to the Columbia Bridge to see if M.L. could identify appellant as her assailant. M.L., sitting in a patrol car approximately 20 feet away from where appellant was standing, stated, "[t]hat's not him."

{¶ 4} Later that day, officers recovered video footage from the parking garage where M.L. was attacked. Although the video did not include footage of the stairwell where the attack occurred, the video portrayed other areas of the garage. Still photographs taken from this footage depicted a thin, white male with short, blonde-cropped hair walking through the parking garage at the same time M.L. was in the garage. The male was dressed in a dark hoodie, black tennis shoes, and black shorts with white trim on the side. Officers believed this individual was M.L.'s assailant. Officer Boyd was shown the photographs and recognized that the clothing the assailant was wearing matched the clothing appellant had been wearing at the bridge.

{¶ 5} M.L. was asked to look at a photographic lineup, which was administered by John Ebbing, a city of Hamilton police officer who had no involvement in M.L.'s case. After viewing the six pictures on the photographic array, M.L. pointed to a picture of appellant, stating "this looks most like him."

{¶ 6} Appellant was subsequently arrested and indicted on charges of kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree, abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree, gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree, and breaking and entering in violation of R.C. 2911.13(B), a felony of the fifth degree. The kidnapping charge was accompanied by a R.C. 2941.149 repeat violent offender specification.

{¶ 7} Appellant pled not guilty to the charges and a jury trial was held in February 2015. At the conclusion of this trial, the jury found appellant guilty of gross sexual imposition. However, the jury was unable to reach a verdict on the remaining charges.

{¶ 8} A second jury trial was held in April 2015. The jury found appellant guilty of the remaining charges set forth in the indictment, and the trial court found appellant to be a repeat violent offender. At appellant's sentencing hearing, the trial court concluded that the kidnapping, abduction, gross sexual imposition, and breaking and entering convictions were allied offenses of similar import. The state elected to proceed on the kidnapping charge, and appellant was sentenced to an 11-year mandatory prison term. No additional prison term was imposed on the repeat violent offender specification.

{¶ 9} Appellant timely appealed his conviction and sentence, raising four assignments of error for our review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} DEFENSE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO FILE A MOTION TO SUPPRESS THE EYEWITNESS IDENTIFICATION AND ARREST OF

[APPELLANT].

{¶ 12} In his first assignment of error, appellant argues his trial counsel was ineffective for failing to file a motion to suppress M.L.'s eyewitness identification. Appellant asserts his trial counsel "had a strong basis to file a motion to suppress the eyewitness identification and arrest of Mr. Patrick since [p]olice [o]fficers lacked reasonable grounds of suspicion, supported by circumstances sufficiently strong to warrant a cautious person in the belief that Mr. Patrick was guilty of attacking [M.L.]." Appellant contends M.L.'s photographic lineup identification was "tainted" and unreliable as she had previously viewed appellant at the Columbia Bridge.

{¶ 13} "To establish a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's actions were outside the wide range of professionally competent assistance, and that prejudice resulted by reason of counsel's actions." *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17, quoting *Strickland* at 694. A defendant's failure to satisfy one part of the *Strickland* test negates a court's need to consider the other. *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 7.

{¶ 14} The failure to file a motion to suppress does not constitute per se ineffective assistance of counsel. *State v. Smith*, 12th Dist. Fayette No. CA2014-05-013, 2015-Ohio-1094, ¶ 44. To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must be able to prove that there was a basis for suppression of the evidence in question. *State v. Robinson*, 12th Dist. Butler No. CA2014-12-256, 2015-Ohio-4649, ¶ 49; *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65. Even when there is

some evidence in the record to support a motion to suppress, "an appellate court presumes that defense counsel was effective if defense counsel could reasonably have decided that the motion to suppress would have been futile." *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 20.

{¶ 15} "When a witness identifies a defendant prior to trial, due process requires a court to suppress evidence of the witness's prior identification * * * if the confrontation was unduly suggestive of the defendant's guilt and the identification was unreliable under the totality of the circumstances." *State v. Ward-Douglas*, 12th Dist. Warren CA2011-05-042, 2012-Ohio-4023, ¶ 13, citing *State v. Murphy*, 91 Ohio St.3d 516, 534 (2001). Therefore, before identification testimony may be suppressed, "the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Id.* at ¶ 14, citing *Neil v. Biggers*, 409 U.S. 188, 198-199, 93 S.Ct. 375 (1972). If the defendant meets his burden of showing that the identification procedure was unduly suggestive, the court must then determine whether the identification, when viewed under the totality of the circumstances, is reliable despite its suggestive character. *Id.* at ¶ 15. However, "[i]f no impermissibly suggestive procedure has been employed by the state * * * a court need not reach the second step of the process regarding the reliability of the identification." *Id.* at ¶ 16. *See also State v. Andrews*, 12th Dist. Butler No. CA2009-02-052, 2010-Ohio-108, ¶ 12.

{¶ 16} After reviewing the record, we find that trial counsel's decision to forego filing a motion to suppress was objectively reasonable. Despite appellant's arguments to the contrary, the photographic lineup procedures employed by the state were not unnecessary suggestive. The state presented evidence that the photographic array was both put together and administered by officers who had no knowledge of, or involvement in, the investigation of M.L.'s attack. Further, prior to M.L. viewing the lineup, she was advised by Officer Ebbing

that

> the photos you are about to view consist of six photographs in no particular order of importance. The subject of this investigation may or may not be included in the photographs. I do not know who the subject of the investigation is. Look carefully at the photographs of all six people and then advise me whether or not to select any of the photographs.

Thereafter, M.L. viewed the lineup, pointed to appellant's photograph, and said, "this looks most like him."

{¶ 17} The fact that M.L. saw appellant at the Columbia Bridge and was unable to identify him as her assailant does not invalidate her photographic lineup identification. M.L. explained that she did not identify appellant as her attacker at the bridge because "he looked different." She explained, "[w]hen he attacked me he had a black or dark blue jacket on, and the hood was up. But when I saw him at the corner he had thrown away the jacket and he had taken his undershirt off, and he was naked above is waist. And that was confusing to me."

{¶ 18} Additionally, M.L.'s identification of appellant as her assailant must be viewed in conjunction with Officer Boyd's identification of appellant as the individual depicted in the video footage from the parking garage. At trial Boyd explained that within half an hour of the assault, he encountered appellant in close proximity to the parking garage where the assault occurred. Appellant acted suspiciously when he noticed Boyd. According to Boyd, appellant "looked in my direction and stopp[ed] underneath the bridge kind of abruptly." After interacting with appellant at the bridge, Boyd completed a field interview card ("FI card") in which he described appellant's clothing. Boyd noted appellant had on "[b]lack Adidas gym shorts, black Nike shoes, no shirt on but carrying black t-shirts." Later, upon viewing still photographs taken from video footage of the parking garage, Boyd recognized the clothing the assailant was wearing as the same clothing appellant had on at the bridge. Boyd testified

that he "saw the shorts he had on had the stripes on the side, which matched the stripes he had on when I did my FI card. The shoes were black and white that matched what he had on." Boyd was able to identify appellant as M.L.'s assailant.

{¶ 19} Given the foregoing, we find that appellant's trial counsel did not render ineffective assistance when he decided not to file a motion to suppress the eyewitness identification. Appellant cannot demonstrate that the photographic lineup procedures employed by the state were unnecessarily suggestive or that the state lacked probable cause for his arrest. The filing of a motion to suppress under these circumstances would, therefore, have been futile.

{¶ 20} Accordingly, for the reasons set forth above, appellant's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} DEFENSE COUNSEL WAS INEFFECTIVE AND THE TRIAL COURT ABUSED ITS DISCRETION BY INFORMING THE JURY OF [APPELLANT'S] CONVICTION OF GROSS SEXUAL IMPOSITION.

{¶ 23} In appellant's second assignment of error, he contends his trial counsel was ineffective for asking the court to allow into evidence at his second trial his conviction for gross sexual imposition. He also argues the trial court's decision to admit this evidence was in contravention of Evid.R. 403(B) and, therefore, an abuse of the court's discretion.

**Ineffective Assistance of Counsel**

{¶ 24} The record reveals that prior to the second trial commencing, the state filed a motion in limine seeking an order "preventing any mentioning, referring to, and/or attempting to convey to the jury any reference of [appellant's] conviction for [g]ross [s]exual [i]mposition." Appellant's trial counsel objected and asked that the jury be permitted to hear about appellant's conviction from the first trial. The court overruled the state's motion in limine, and

defense counsel made numerous references during opening and closing statements to the fact that appellant had previously been convicted of gross sexual imposition under the same set of facts being presented to the jury. Essentially, trial counsel's strategy was to argue that appellant should not be convicted twice for the same criminal conduct and that such conduct, while amounting to gross sexual imposition, did not amount to kidnapping, abduction, or breaking and entering.

**{¶ 25}** During his opening statement, trial counsel stated:

> We are in a unique situation, for it's already been told [to] you, that Mr. Patrick has been convicted of gross sexual imposition. He is being held accountable for the charge of gross sexual imposition. * * * That's what this case is about. This was a gross sexual imposition. That he had sexual contact with [M.L.], not the spouse of Mr. Patrick, and Mr. Patrick personally compelled [M.L.] by force, or (indiscernible) force. That is the definition of and the law of gross sexual imposition.
>
> What happened to [M.L.] on August 14th should not have occurred. I agree with that. But also what's going to happen today and tomorrow I think should not occur if the State is able to get a conviction on a kidnapping and abduction.

**{¶ 26}** Similarly, during his closing statement, trial counsel stated:

> I ask that you look at all the other elements obviously. Purpose, force, threats, involved with each and every charge. There's three charges you'll decide. The gross sexual imposition is not for your decision. Mr. Patrick is convicted of gross sexual imposition of this date, in this time, involving [M.L.]. And that is what this case is about.
>
> According to the definition, he had sexual contact with [M.L.], not the spouse of Mr. Patrick, Mr. Patrick purposefully compelled [M.L.] to submit by force with (indiscernible) force. Like an assault case, like a domestic violence case, although I think assaults last longer, and there's more on top, and all that in between. You know, it's not a kidnapping, not an abduction, under the facts and evidence I presented to you, and applying that to the law.
>
> * * *

What happened to [M.L.] in that stairwell should not have happened. And for that I'm sorry. But what the State is trying to do to Mr. Patrick is also unfair. I say that because as I said before I believe it's the stretch. The evidence and the facts in this case does [sic] not rise to the kidnapping and abduction. It's a gross sexual imposition case.

\* \* \*

And I think the truth in this case is that Mr. Patrick is guilty of gross sexual imposition for attacking [M.L.] in that stairwell. And [he] will be held accountable for that. But it is not a kidnapping or an abduction. And the State has failed to prove that beyond a reasonable doubt. Thank you.

{¶ 27} As previously set forth, in order to prevail on his ineffective assistance of counsel claim, appellant must show that his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *Ullman*, 2003-Ohio-4003 at ¶ 43. Here, although appellant's trial counsel's strategy in admitting to the gross sexual imposition conviction in an effort to obtain an acquittal on the remaining charges of kidnapping, abduction, and breaking and entering was ultimately unsuccessful, this does not mean that counsel's performance was constitutionally deficient. *See State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 88; *State v. Murphy*, 12th Dist. Butler No. CA2009-05-128, 2009-Ohio-6745, ¶ 43 ("the fact that the trial strategy was ultimately unsuccessful or that there was another possible and better strategy available does not amount to ineffective assistance of counsel"). There exists a "strong presumption \* \* \* that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance." *State v. Martin*, 12th Dist. Warren Nos. CA 2003-06-065 and CA2003-06-066, 2004-Ohio-702, ¶ 12. We conclude that appellant's trial counsel's decision to admit and rely on appellant's prior conviction for gross sexual imposition in an effort to obtain an acquittal on the remaining charges falls within the wide range of acceptable professional assistance. Appellant's claim

that his trial counsel was ineffective is without merit.

## Evidence of Conviction

{¶ 28} Appellant also contends the trial court erred when it permitted the parties to introduce evidence of his conviction for gross sexual imposition.

{¶ 29} "It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court." *State v. Jones*, 12th Dist. Butler No. CA2012-04-077, 2013-Ohio-654, ¶ 54. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Isham*, 12th Dist. Butler No. CA2013-07-123, 2014-Ohio-1689, ¶ 10.

{¶ 30} Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." According to Evid.R. 403(A), relevant evidence is not admissible "if it's probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Further, relevant evidence may be excluded "if its probative value is substantially outweighed by considerations of undue delay, or of needless presentation of cumulative evidence." Evid.R. 403(B).

{¶ 31} Here, the trial court found evidence of appellant's conviction for gross sexual imposition relevant and admissible as an element of the breaking and entering charge. In reaching this conclusion, the court stated the following:

> I do believe that it is relevant. The only reason for excluding information or evidence of some kind of a stipulation about a prior conviction for gross sexual imposition, the only reason for doing that under the rules of evidence would be that it would be irrelevant or, if relevant, that it would be - - that it's probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury.

I find, number one, that such information is going to be relevant in this case, especially in the jury's - - and I don't want the State to be disadvantaged. I'm not trying to be clever because I know the State doesn't want it in. But from my standpoint, I honestly believe that if it doesn't come in the State's going to be disadvantaged in being able to prove breaking and entering. Because if the jury finds that this period of detention was not long enough to constitute either kidnapping or abduction, then the jury is going to have no way of finding Mr. Patrick guilty of breaking and entering.

* * *

So anyway, I think the jury needs to become aware that - - and I'll go beyond that, I guess. What I'm really saying is even if the Defense wouldn't want to introduce it as evidence in some fashion, I think in my instructing the jury as to breaking and entering I need to inform the jury that the jury can find Mr. Patrick guilty of that crime even if it doesn't find him guilty of kidnapping or abduction.

So anyway, that's - - I think it's relevant certainly for that purpose. And certainly as far as describing the conduct that took place, the behavior that constitutes gross sexual imposition, that is going to obviously be very pertinent, very relevant for kidnapping as well with the kinds of description [sic] of kidnapping that we have under this.

So that's my rationale. I think that it's very relevant. I don't believe that it's probative value is going to be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. I think the jury can do what it's supposed to do.

{¶ 32} We find no error in the trial court's decision to admit evidence of appellant's conviction for gross sexual imposition. To obtain a conviction for breaking and entering, the state was required to prove that appellant "trespass[ed] on the land or premises of another, *with purpose to commit a felony.*" (Emphasis added). R.C. 2911.13(B). As the trial court noted, the jury was entitled to hear evidence that the underlying "felony" was kidnapping, abduction, or gross sexual imposition.

{¶ 33} Therefore, having found no merit to appellant's arguments, we overrule his second assignment of error.

{¶ 34} Assignment of Error No. 3:

{¶ 35} THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 36} In his third assignment of error, appellant contends his convictions were against the manifest weight of the evidence. Appellant has not, however, provided any specific argument or citation to authority or to the record in support of his claim. The state has requested that the assignment of error be struck for failure to comply with appellate rules for briefing.

{¶ 37} App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." In turn, App.R. 16(A)(7), requires an appellant's brief to include an argument containing the appellant's contentions with respect to each assignment of error presented for review and "the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶ 38} Because appellant failed to present any specific argument with respect to his contention that his convictions were against the manifest weight of the evidence and failed to support his assigned error with citations to the record, we disregard his third assignment of error for failure to comply with App.R. 12(A)(2) and 16(A)(7). *See State v. Lattire*, 12th Dist. Butler No. CA2004-01-005, 2004-Ohio-5648, ¶ 40; *State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist.1998).

{¶ 39} Assignment of Error No. 4:

{¶ 40} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED [APPELLANT] TO A MANDATORY MAXIMUM.

{¶ 41} In the body of his brief, appellant sets forth a one sentence argument in support

of his fourth assignment of error. Appellant contends that "[i]t was an abuse of discretion for the trial court to sentence Mr. Patrick to a mandatory maximum sentence." Appellant failed to specify how the trial court abused its discretion and also failed to cite to any portion of the record or to any legal authority in support of his claim. We therefore disregard his fourth assignment of error for failure to comply with App.R. 12(A)(2) and 16(A)(7). *See Lattire*, 2004-Ohio-5648 at ¶ 40; *Watson*, 126 Ohio App.3d at 321.

**{¶ 42}** Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.