[Cite as *State v. Stanforth*, 2017-Ohio-4040.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2016-07-052 |
| | : | O P I N I O N |
| - vs - | | 5/30/2017 |
| | : | |
| HENRY L. STANFORTH, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2015 CR 0171

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Joshua R. Crousey, One East Main Street, Amelia, Ohio 45102, for defendant-appellant

**RINGLAND, J.**

{¶ 1}   Defendant-appellant, Henry Stanforth, appeals his conviction and sentence in the Clermont County Court of Common Pleas for multiple sexual offenses.  For the reasons detailed below, we affirm.

{¶ 2}   On March 26, 2015, Stanforth was indicted on one count of importuning in violation of R.C. 2907.07, a third-degree felony, and two counts of gross sexual imposition in violation of R.C. 2907.05, both third-degree felonies.  The indictment alleged that between

June 1, 2014 and November 23, 2014, Stanforth sexually abused seven-year-old P.E. and eight-year-old A.E.[1]

{¶ 3} This matter proceeded to a jury trial. The state presented the testimonies of the victims' mother ("Mother") and father, social workers, the victims themselves, as well as other individuals, including a former Stanforth victim who alleged a similar pattern of grooming and exploitation when she was a child.

{¶ 4} Mother testified that, prior to this incident, she had a strong bond with Stanforth and his wife for many years. Mother testified that the children also had a relationship with Stanforth who was a grandfather-figure to A.E. and P.E. The children would go fishing and four-wheeling with Stanforth in his backyard and Stanforth would occasionally give the children money and candy. The children would also stay the night at the Stanforth residence.

{¶ 5} In November of 2014, Mother testified that A.E. began wetting the bed and P.E. would engage in similar changes in behavior such as sleeping on the couch or turning on the television in the middle of the night. P.E. also began exhibiting self-esteem issues.

{¶ 6} Mother testified that in January of 2015, as she was making the bed, P.E. started telling her that someone had been bullying her at school and later asked if they could "speak privately." P.E. explained to Mother that someone had been "acting funny" in front of her and later stated that a person had peed in front of her and that the person had touched her "down there and that he had her touch him down there." Mother then spoke with A.E., who also confirmed that Stanforth had shown her his private parts.

{¶ 7} Mother contacted authorities and the children were interviewed by social workers at the Mayerson Center. During the interview, as corroborated by the testimony of

---

1. Based on the range of dates contained in the indictment, P.E. may have been either six or seven years old and A.E. may have been seven or eight years old at the time of the abuse. For purposes of continuity, we will refer to P.E. as seven and A.E. as eight.

the social worker, A.E. stated that Stanforth had lifted her shirt to look at her boobs and pulled down her pants to look at her "thing" and that he had shown her his "thing." An anatomical drawing confirmed that A.E. described her vagina as her "thing" and Stanforth's "thing" as his penis. In her separate interview, P.E. stated that Stanforth had touched her "thing" and had made her touch his "thing." Again, P.E. confirmed the meaning of "thing."

{¶ 8} The Clermont County Sheriff's Office assigned an investigator to the case and Mother was asked to speak with Stanforth about the allegations while wearing a hidden recording device. Mother spoke with Stanforth on two occasions in a nonconfrontational manner, while acting as a concerned parent trying to understand the allegations. Mother did not disclose that she had spoken with law enforcement. During the conversations, Stanforth denied any wrongdoing, but offered strange and sometimes conflicting accounts. For example, Stanforth initially denied any inappropriate conduct, but later admitted that the children had seen him "peeing" in the woods. Later, Stanforth detailed an account where A.E. had allegedly gotten injured while riding a four-wheeler and she had pulled her pants and underwear down to inspect an injury. During all of the recorded conversations, Stanforth denied the allegations as presented to him, but vacillated in some responses stating that he would "make sure nothing happens again" and ensuring that he would never be with the children alone. Several times, Stanforth expressed concern that his wife was "going to shit" or "kill him" if she learned about the accusations.

{¶ 9} P.E. testified at trial and identified Stanforth as the perpetrator. P.E. explained that she would hang out with Stanforth and ride four-wheelers at his house. P.E. detailed the sexual incidents as occurring when she was alone with Stanforth in his exercise room. During the summer of 2014, P.E. testified that Stanforth had touched her private parts and he had her touch his private parts. P.E. stated that this had occurred on more than one occasion and Stanforth had told P.E. not to tell anyone.

{¶ 10}   A.E. also testified at trial and detailed the sexual incident occurring during the summer of 2014.  A.E., like her sister, stated that she would go over to Stanforth's house and stay the night.  Stanforth would go fishing with her and give her money and candy.  Finally, A.E. detailed the encounter with Stanforth and testified that Stanforth had shown her his private and told her not to tell anyone.

{¶ 11}   The final witness for the state was A.L. who was identified as a former Stanforth victim brought to testify as to past sexual abuse relevant to show plan, scheme, or absence of mistake.  A.L. corroborated the grooming account and identified Stanforth's scheme for engaging in sexual behavior with minor children.  A.L. testified that when she was 12 years old, A.L. had befriended her by taking her out for fun activities like fishing and four-wheeling.  Eventually, Stanforth got A.L. alone and would begin the abuse.  A.L. testified that Stanforth would pull down her pants and touch her vagina and would pull down his pants and have her touch his penis.  A.L. likewise testified that Stanforth would give her money and would take her to the store to buy candy.  As with the victims in the present case, A.L. stated that Stanforth told her not to tell anyone.

{¶ 12}   The jury found Stanforth guilty of all offenses listed in the indictment.  The trial court imposed a three-year prison sentence for importuning and five-year prison sentences for each count of gross sexual imposition.  The trial court ordered all sentences to be served consecutively for a total stated prison term of 13 years.  Stanforth now appeals the decision of the trial court, raising five assignments of error for review.  For ease of discussion, Stanforth's assignments of error will be addressed out of order.

{¶ 13}   Assignment of Error No. 1:

{¶ 14}   THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING EVIDENCE OF "OTHER ACTS" AS SUBSTANTIVE EVIDENCE.

{¶ 15}   In his first assignment of error, Stanforth argues the trial court erred and

abused its discretion by admitting other acts evidence through the testimony of A.L. regarding his alleged prior sexual misconduct directed towards her when she was a 13-year-old child. Stanforth's argument is without merit.

{¶ 16} A trial court has broad discretion in the admission and exclusion of evidence. *State v. Sanchez-Garza*, 12th Dist. Butler No. CA2016-02-036, 2017-Ohio-1234, ¶ 33. In turn, a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Wainscott*, 12th Dist. Clermont No. CA2015-07-056, 2016-Ohio-1153, ¶ 17. An abuse of discretion is more than an error of law or judgment, but instead connotes that "the trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

{¶ 17} Stanforth contends that A.L.'s testimony constitutes inadmissible other acts evidence. As previously noted, A.L. testified that in 2000, when she was 12 years old, she was sexually abused by Stanforth. A.L. explained that Stanforth was a relative of her mother's ex-husband and would sometimes invite her and other young females over to his house to fish and ride four-wheelers on his property. Eventually, Stanforth would get her alone and would touch her vagina and breasts. This conduct occurred in Stanforth's basement near the exercise equipment and in his truck. Following the instances of sexual abuse, A.L. testified that Stanforth would give her money for candy and informed her that she should not tell anyone of the sexual abuse.

{¶ 18} This issue is considered in light of Evid.R. 404(B) and R.C. 2945.59. The Ohio Supreme Court outlined a three-part test for courts to use when determining the admissibility of so-called "other acts" evidence. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19-20. First, the court should determine if the evidence is relevant to the determination of the action. *Id.* at ¶ 20. Second, the court should determine whether the evidence is presented to

prove the character of the accused to show activity in conformity therewith or whether the evidence is presented for a legitimate purpose, such as those designated in Evid.R. 404(B). *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 17. Finally, the court should consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Adams*, 9th Dist. Lorain No. 15CA010868, 2017-Ohio-1178, ¶ 10, quoting *Williams* at ¶ 20.

{¶ 19} Upon review of the record, we find the trial court did not abuse its discretion by admitting A.L.'s testimony. First, the other acts evidence in A.L.'s testimony was relevant because it tended to show Stanforth's motive and plan he exhibited of targeting, mentoring, grooming, and abusing young females. Such testimony corroborated the testimony of A.E. and P.E., as well as their mother in describing the relationship and the ultimate instances of sexual abuse. Mother testified that she had a close relationship with Stanforth and he accepted the role of a grandfather-figure for the children. The children testified that Stanforth would fish and ride four-wheelers with them. Ultimately, Stanforth would isolate each child and engage in sexual misconduct. Thereafter, Stanforth would give the victims money for candy and would tell them "not to tell anybody."

{¶ 20} Second, the other acts evidence was elicited for a legitimate purpose, including motive, intent, plan, scheme and absence of mistake. Stanforth's prior instance of grooming was relevant to his motive, plan, and scheme. Similarly, Stanforth's prior conduct rebutted his claims and denials captured on recording devices that perhaps the children had only "caught him peeing" or that he accidentally viewed their vaginas. Furthermore, immediately following A.L.'s testimony, the trial court gave a limiting instruction that such evidence was not being offered to prove Stanforth's character. This instruction was also given to the jury prior to deliberations. *Williams*, 134 Ohio St.3d at ¶ 23 (courts may presume the jury followed instructions).

{¶ 21} Third, the probative value of the other acts evidence was not substantially outweighed by the danger of unfair prejudice. As noted above, the evidence of Stanforth's prior conduct was relevant to Stanforth's motive and plan. The evidence was also not unduly prejudicial because the trial court instructed the jury that the other acts evidence could not be considered to show that Stanforth had acted in conformity with a character trait. The limiting instruction lessened any potential prejudicial effect of A.L.'s testimony, which was relevant to the testimony of P.E. and A.E. regarding the sexual abuse, which Stanforth had denied.

{¶ 22} Accordingly, we find the trial court did not abuse its discretion by permiting A.L. to testify as to "other acts" evidence. Stanforth's first assignment of error is without merit and hereby overruled.

{¶ 23} Assignment of Error No. 4:

{¶ 24} THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE BECAUSE THE TESTIMONY PRESENTED WAS INSUFFICIENT FOR A FINDING OF GUILT.

{¶ 25} In his fourth assignment of error, Stanforth argues that his convictions are based on insufficient evidence and against the manifest weight of the evidence. We disagree.

{¶ 26} The concepts of sufficiency of the evidence and weight of the evidence are legally distinct. *State v. Wright*, 12th Dist. Butler No. CA2012-08-152, 2014-Ohio-985, ¶ 10. Nonetheless, as this court has observed, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 27} A manifest weight challenge scrutinizes the proclivity of the greater amount of

credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 28} Gross sexual imposition is defined in R.C. 2907.05, which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

 * * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

The Revised Code defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 29} Importuning is defined in R.C. 2907.07 and states:

(A) No person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person.

"Sexual activity" includes "sexual contact," which is defined above. R.C. 2907.01(C).

{¶ 30} Based on our review, we find Stanforth's convictions are both supported by sufficient evidence and are not against the manifest weight of the evidence. The state

presented the testimonies of several witnesses who presented background information as to the grooming process, including that Stanforth had a seemingly strong bond with the victims by engaging in fun activities like fishing and four-wheeling. The testimony confirmed the fact that Stanforth had the opportunity to isolate the 7-and-8-year-old victims.

{¶ 31} The specific conduct charged included two counts of GSI for Stanforth's conduct with 7-year-old P.E. P.E. testified that in the summer of 2015, Stanforth had touched her vagina. P.E. also testified that Stanforth had shown her and had her touch his penis.

{¶ 32} The remaining count, importuning, related to Stanforth's conduct with A.E. In her testimony, A.E. stated that Stanforth had shown her his penis in the summer of 2015.

{¶ 33} We have thoroughly reviewed the evidence in this case and find the state presented sufficient evidence to sustain Stanforth's convictions and the jury's verdict was not against the manifest weight of the evidence. Acting as trier of fact, the jury was in the best position to resolve factual questions and evaluate witness credibility. The testimony and evidence introduced at trial establishes a common pattern of grooming and abuse that was perpetrated against two young victims and a guilty finding on all counts was appropriate. Accordingly, we find Stanforth's fourth assignment of error is without merit and hereby overruled.

{¶ 34} Assignment of Error No. 2:

{¶ 35} THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT MERGING THE CONVICTIONS OF COUNTS 2 AND 3.

{¶ 36} Assignment of Error No. 3:

{¶ 37} PRESENTATION OF TWO IDENTICAL COUNTS TO THE JURY VIOLATED APPELLANT'S DUE PROCESS AND DOUBLE JEOPARDY RIGHTS.

{¶ 38} Stanforth's second and third assignments of error may be addressed together.

Stanforth claims that the state failed to distinguish specific instances of sexual conduct in its indictment, bill of particulars, and during trial. In particular, Stanforth argues that Counts 2 and 3 as listed in the jury instructions were identical and confused the jury. This lack of specificity, according to Stanforth, violated his due process rights and subjected him to double jeopardy. Stanforth maintains that the two GSI convictions should be merged or otherwise dismissed as in violation of his constitutional rights. We disagree.

{¶ 39} Stanforth cites *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), and *State v. Hemphill*, 8th Dist. Cuyahoga No. 85431, 2005-Ohio-3726, in support of his argument that the state's case lacked the requisite level of specificity to sustain his convictions.

{¶ 40} In *Valentine*, the defendant was charged with 20 counts of child rape and 20 counts of felonious penetration of a minor. The state alleged that each count occurred over a 10-month period. *Id.* at 629. The indictment mirrored the Revised Code and contained identical language for each count of child rape and felonious penetration. *Id.* The bill of particulars alleged that each offense occurred in the defendant's home. *Id.* at 634. The Sixth Circuit granted habeas relief because the indictment and evidence presented at trial "did not attempt to lay out the factual bases of forty separate incidents that took place." *Id.* at 632. In fact, the only evidence presented with regard to the number of sexual encounters between Valentine and the victim came from the victim who described a typical abusive encounter and then estimated the number of times that the behavior occurred. *Id.* at 632-633. The court found that "[g]iven the way that Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own." *Id.* at 633.

{¶ 41} In *Hemphill*, the defendant was convicted of 22 counts each of rape and gross sexual imposition with sexually violent predator specifications, 7 counts each of rape without specifications, and 22 counts of kidnapping with sexual motivation specifications. *Id.* at ¶ 49. Relying on *Valentine*, the Eight District held that the state had failed to adequately

- 10 -

differentiate these counts and, with three exceptions, failed to subject each count to individual proof. *Id.* at ¶ 88, ¶ 112. The court found that the majority of the charges were based on a "numerical estimate unconnected to individual, distinguishable events." *Id.* at ¶ 88.

{¶ 42} Based on our review, we find that Stanforth's two GSI convictions for the actions taken against P.E. are not subject to merger. Counts 2 and 3 involved two separate acts of GSI against P.E. In her testimony, P.E. stated that Stanforth had touched her vagina and she had touched Stanforth's penis. The two instances of sexual contact are not allied offenses because Stanforth performed distinct sex acts upon the child victim and had a different animus for each act. *State v. Vancleve*, 12th Dist. Clermont No. CA2014-03-024, 2015-Ohio-230, ¶ 20.

{¶ 43} Furthermore, Stanforth's two GSI convictions did not violate any due process rights or subject him to "double jeopardy." The bill of particulars in this case specifically stated that Count 2 related to the instance in which P.E. touched Stanforth's penis and Count 3 related to Stanforth fondling P.E.'s vagina. P.E.'s testimony separately identified each instance of sexual contact and the state presented the issue as such. This case in unlike the situations presented in *Valentine* and *Hemphill* where the state presented the evidence in an "all or nothing" fashion and generically described a sexual act with an estimated number of times the act occurred. Instead, the state presented evidence tied to each count. This allowed Stanforth the chance to defend against each count separately and allowed the jury to contemplate each count separately. As a result, we find that Stanforth's two GSI convictions are supported by law and do not violate Stanforth's constitutional rights. Therefore, Stanforth's second and third assignment of error are overruled.

{¶ 44} Assignment of Error No. 5:

{¶ 45} TRIAL COUNSEL WAS INEFFECTIVE FOR NOT ADEQUATELY CROSS-

EXAMINING THE WITNESSES.

**{¶ 46}** In his fifth assignment of error, Stanforth alleges that his trial counsel was ineffective. We find no merit to Stanforth's argument.

**{¶ 47}** To establish a claim of ineffective assistance of counsel, the appellant must show that counsel's actions were outside the wide range of professionally competent assistance and that he was prejudiced as a result of counsel's actions. *State v. Patrick*, 12th Dist. Butler No. CA2015-05-090, 2016-Ohio-995, ¶ 13, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

**{¶ 48}** First, Stanforth argues that his trial counsel may have been unsympathetic to his defense because this matter involved sexual crimes committed against young female victims. However, a review of the record shows that Stanforth was zealously represented by counsel and there is no suggestion, aside from Stanforth's own speculation, that any such views tainted his counsel's presentation.

**{¶ 49}** Second, Stanforth argues that his trial counsel was ineffective because he did not "properly" ask the victims to describe the physical features of his penis. This argument is also without merit as the record indicates that Stanforth's trial counsel did cross-examine the victims and asked whether the children could recall any distinctive features of Stanforth's genitalia. When the young female children stated that they could not remember anything unusual or any difference in "coloration," Stanforth's trial counsel declined to press further. The decision to not dwell on such a graphic subject falls within the ambit of trial strategy. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 58. A decision to further press the young victims on such a topic very much could have alienated the jury. Accordingly, we find Stanforth did not receive ineffective assistance of counsel and his fifth assignment of error is overruled.

{¶ **50**} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.