[Cite as *State v. Smith*, 2017-Ohio-5853.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-08-075 |
| | : | O P I N I O N |
| - vs - | | 7/17/2017 |
| | : | |
| GEORGE SMITH, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM MASON MUNICIPAL COURT
Case No. 15 CRB 00364

Bethany S. Bennett, Mason City Prosecutor, 6000 Mason-Montgomery Road, Mason, Ohio 45040, for plaintiff-appellee

Alexander, Webb & Kinman, Maxwell D. Kinman, 423 Reading Road, Mason, Ohio 45040, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, George Smith, appeals from his misdemeanor conviction in the Mason Municipal Court for complicity to theft. For the reasons set forth below, we affirm Smith's conviction.

{¶ 2} Following an investigation into the theft of a cellphone from a Verizon Wireless store in Deerfield Township, Warren County, Ohio, Smith was charged by complaint with one

count of complicity to theft in violation of R.C. 2923.03, a misdemeanor of the first degree. Smith entered a not guilty plea to the charge and a bench trial before a magistrate commenced on January 26, 2016.

{¶ 3} At trial, the state presented testimony from Samantha Aguilar and Paul Huston, two employees who were present at the Verizon store on April 22, 2015, the date the cell phone was stolen. Aguilar testified that on April 22, 2015, she observed two "taller African males" enter the store. One of the men was wearing a "black hoody" sweatshirt, and this man went to the front of the store near a cellphone display area. The second man, later identified as Smith, walked in and went towards the back of the store. About 30 seconds after the men entered the store, Aguilar heard a snap and a security alarm go off. Aguilar then observed the man in the black hoody run out of the store. A Galaxy S6A valued at $750 was missing from the store's display area.

{¶ 4} Aguilar blocked the doorway of the store to prevent Smith from leaving while Huston went after the other man. Smith tried telling Aguilar that he "was innocent" and was not with the man who fled the store. As Aguilar called 9-1-1 to report the theft, Smith pushed past her and ran out the door. Aguilar followed Smith out the door and saw him get into an older, silver Jaguar that was being driven by the man in the black hoody. Although the vehicle was approximately 300 to 400 feet away, Aguilar was able to see the license plate number of the car, and she gave this information to the 9-1-1 dispatcher.

{¶ 5} Aguilar testified that within five minutes of placing the 9-1-1 call, a sheriff's deputy responded to the scene of the theft. She gave the deputy the license plate number for the Jaguar, and when "he pulled up the license plate, [he] also pulled up a photo" of Smith, the man Aguilar testified had pushed past her and fled the store. Aguilar stated she had gotten a really good look at Smith's face when she was trying to block him from leaving the store.

{¶ 6} Huston also testified about his observations of the events that occurred on the date of the theft. Huston explained that two gentlemen came into the Verizon store about 30 seconds apart from one other before they began to huddle near the display phones. Huston heard a "snap[ing]" sound and overheard Smith say to the man in the black hoody, "You got it, go." Shortly thereafter, the man in the hoody ran out the store. Huston stated that after giving chase to the man in the black hoody, he returned to the store and got a good look at the second man because the man got "in his face" when he pushed past Huston and Aguilar to leave the store. Huston identified the second man as Smith.

{¶ 7} David Sheppard, a deputy with the Warren County Sheriff's Office, also testified on behalf of the state. Deputy Sheppard explained that upon arriving at the Verizon store, he ran the license plate number that Aguilar provided and as soon as the photograph of the owner of the Jaguar popped up on his computer, Aguilar said, "That's him right there." The registered owner of the Jaguar was Smith. A warrant for Smith's arrest was issued, but Sheppard was not able to identify the man in the black hoody.

{¶ 8} Following Sheppard's testimony, the state moved to have a security video taken from the Verizon store on April 22, 2015, admitted into evidence. Defense counsel did not object to the video being admitted, and the magistrate accepted it into evidence.[1] Thereafter, defense counsel made a Crim.R. 29 motion for acquittal, which was denied by the magistrate. Smith then testified in his own defense.

{¶ 9} Smith explained that on April 22, 2015, he was using his silver Jaguar to give

---

1. The video was first played by defense counsel during his cross-examination of Aguilar. The video captured the two men's entrance into the store as well as the man in the black hoody's exit of the store. However, a malfunction caused the video to cutoff before the second man left the store. During Deputy Sheppard's testimony, it became apparent that he had previously viewed a copy of the security video that contained the second individual leaving the store. At this time defense counsel objected to the deputy testifying about observations he made from watching the entire video. The magistrate overruled defense counsel's objections and permitted the testimony. At the close of the state's case-in-chief, the prosecutor moved to admit the malfunctioning security video into evidence. Defense counsel indicated he had "no objection to that being admitted," and the exhibit was accepted into evidence by the magistrate.

"bootleg cab rides." Smith claimed that he had picked up two men at a Kroger grocery store on Vine Street in Cincinnati, Ohio. In exchange for $40, Smith drove the two men to Kings Auto Mall in Warren County, Ohio. He then took the two men to White Castle and a Kroger on Fields Ertle Road. The men then asked for a ride back to the Kroger on Vine Street. Prior to taking the men back to Cincinnati, Smith stopped at a shopping plaza that held a Starbucks and a Verizon store. According to Smith, while he ran into Starbucks to use the restroom, the two men went into the Verizon store. When Smith left the Starbucks store, he saw the man wearing a black hoody sitting in the back seat of the Jaguar and the second man was walking away from the Verizon store before getting into the Jaguar. Smith drove the men back to the Kroger on Vine Street and dropped them off there. According to Smith, he did not know the names of the two men he gave a ride to, and he did not know that the two men had stolen a cell phone from the Verizon store. On cross-examination, Smith admitted he has prior convictions for theft and receiving stolen property.

{¶ 10} Following Smith's testimony, defense counsel moved to have a photograph of Smith's Jaguar entered into evidence. The magistrate accepted the photograph into evidence, heard closing arguments from the parties, and took the matter under advisement. On February 23, 2016, the magistrate issued a written decision finding Smith guilty of complicity to theft. Smith filed a general objection to the magistrate's decision, and on July 19, 2016, the trial court overruled the objection. On August 19, 2016, Smith was sentenced to 180 days in jail, with 150 days suspended on the condition that he comply with the terms of his probation, to pay a $1,000 fine plus court costs, with $850 of the fine being suspended, and to pay $750 in restitution to Verizon Wireless.

{¶ 11} Smith appealed his conviction, raising the following as his only assignment of error:

{¶ 12} THE TRIAL COURT ERRED WHEN IT FOUND THE DEFENDANT GUILTY

AGAINST THE WEIGHT OF THE EVIDENCE.

{¶ 13} In his sole assignment of error Smith argues his conviction for complicity to theft is against the manifest weight of the evidence as the state "never identified [him] beyond a reasonable doubt as one of the perpetrators." Smith contends that the security video should not have been admitted into evidence as it lacked any probative value in identifying the perpetrators of the theft.

{¶ 14} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 15} Smith was convicted of complicity to theft. Pursuant to R.C. 2913.02(A), a person has committed a theft when the person, with purpose to deprive the owner of property or services, knowingly obtains or exerts control over the property or services without the

consent of the owner or person authorized to give consent. The complicity statute provides that "[n]o person, acting with the kind of culpability required for the commission of any offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). A person must act "knowingly" to commit a theft offense. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 16} To be complicit to a crime by aiding and abetting, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "[A] person's mere association with a principal offender is not enough to sustain a conviction based upon aiding and abetting." *State v. Coldiron*, 12th Dist. Clermont Nos. CA2003-09-078 and CA2003-09-079, 2004-Ohio-5651, ¶ 17. The accused "must actively participate in some way and contribute to the unlawful act to aid or to abet." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 49, citing *State v. Salyer*, 12th Dist. Warren No. CA2006-03-039, 2007-Ohio-1659, ¶ 27. Aiding and abetting may be shown through either direct or circumstantial evidence, and "'participation in criminal intent may be inferred from the presence, companionship, and conduct before and after the offense is committed.'" *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 19, quoting *State v. Lett*, 160 Ohio App.3d 46, 2005-Ohio-1308, ¶ 29 (8th Dist.).

{¶ 17} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find Smith's conviction for complicity to theft is not against the manifest weight of the evidence. Huston and Aguilar testified that the Galaxy S6A was stolen from Verizon shortly after Smith and the man in the black hoody entered the store together. Both employees heard a "snap[ing]" sound when the phone was taken. Huston overheard Smith

tell his associate in the hoody "You got it, go," right before the man in the hoody left the phone-display area and ran out the door. When Smith went to follow his associate out the door, both Huston and Aguilar got a good look at Smith's face. Aguilar followed Smith outside, saw him climb into a Jaguar driven by the man in the hoody, and was able to get the car's license plate number. The Jaguar was owned by Smith. By encouraging the man in the hoody to take the phone and by providing the vehicle used to flee from the Verizon store after the theft, Smith aided and abetted in the theft of the cellphone.

{¶ 18} Smith challenges Aguilar's and Huston's identification of him as one of the men involved in the theft. However, both Aguilar and Huston testified they got a good look at the second man involved in the theft when the man tried to follow his partner out of the store. Further, Aguilar testified that she recognized Smith as the second man involved in the theft when his photograph popped up on Deputy Sheppard's computer after Sheppard ran the Jaguar's license plate number. Contrary to Smith's arguments, Aguilar and Huston's testimony identified him beyond a reasonable doubt as one of the perpetrators of the theft.

{¶ 19} In addition to Huston's and Aguilar's testimony, there was also security footage of the theft admitted into evidence. Although Smith challenges the admissibility of the video, arguing that it lacked probative value, we find no error in its admission.[2] The video was first used at trial by defense counsel in his cross-examination of Aguilar and it was later admitted into evidence without defense counsel objecting to its admission. The video has probative value, as it contains footage of the two men's entrance into the Verizon store, their

---

2. Smith has not set forth an assignment of error challenging the admission of the security video into evidence. Rather, within his assignment of error addressing the manifest weight of the evidence, Smith contends that the video should not have been admitted as it was without probative value. As this court has consistently observed, "[a] trial court has broad discretion in the admission and exclusion of evidence." *State v. Stanforth*, 12th Dist. Clermont No. CA2016-07-052, 2017-Ohio-4040, ¶ 16, citing *State v. Sanchez-Garza*, 12th Dist. Butler No. CA2016-02-036, 2017-Ohio-1234, ¶ 33. Here, we find no error in the court's admission of the security video, as the video contained probative footage of the two men's entrance into the Verizon store, the men's whereabouts within the store, and the departure of one of the men from the store before the video cuts off due to a malfunction.

whereabouts in the store, and the exit of the man in the black hoody. The court was entitled to view and consider this evidence as it related to the testimony of the witnesses at trial.

{¶ 20} The court was also entitled to determine what weight to give to the testimony of the witnesses before it. The parties presented conflicting versions of events. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. In finding Smith guilty, the court was free to discredit Smith's testimony that he was not one of the men depicted on the store's security video, that he had not been involved in the theft of the cellphone, and that he had no knowledge of the theft of the cellphone until after a warrant for his arrest had been issued.

{¶ 21} Accordingly, having reviewed the record in the present case, we conclude that Smith's conviction for complicity to theft is supported by the manifest weight of the evidence. The trial court did not lose its way or create such a manifest miscarriage of justice that Smith's conviction must be reversed and a new trial ordered. Smith's sole assignment of error is, therefore, overruled.

{¶ 22} Judgement affirmed.

S. POWELL and RINGLAND, JJ., concur.