[Cite as *Cleveland v. Jaber*, 2016-Ohio-1542.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 103194 and 103195**

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## MERWAN MARK JABER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Housing Division
Case Nos. 2013 CRB 24143 and 2013 CRB 37001

**BEFORE:** McCormack, J., Jones, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** April 14, 2016

**ATTORNEYS FOR APPELLANT**

Marc E. Dann
Grace Mary Doberdruk
William C. Behrens
The Dann Law Firm Co., L.P.A.
P.O. Box 6031040
Cleveland, OH 44103


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law

Anthony W. Scott
William H. Armstrong, Jr.
Assistant Law Directors
City of Cleveland Law Department
601 Lakeside Avenue, Room 106
Cleveland, OH 44114

TIM McCORMACK, J.:

{¶1} The city of Cleveland filed two complaints against Merwan Mark Jaber for violations of the housing codes regarding two properties he owned in the city. Jaber pleaded no contest. The court found him guilty and assessed $99,000 in fines, significantly in excess of the amount recommended by the prosecutor. Jaber did not file a direct appeal to challenge his fines. Rather, he filed a motion to vacate his no contest plea, claiming that he had additional evidence to present to the trial court and also that an additional hearing should have been held prior to sentencing so that he could provide mitigation evidence. The court denied Jaber's motion to vacate the plea, finding no manifest injustice. On appeal from that judgment, Jaber raises a different claim; he claims his plea was not knowing or voluntary because the fines imposed exceeded the recommended amount. As a reviewing court, we do not consider a claim raised for the first time on appeal. Even if we were to consider this claim, the claim lacks merit, as we explain in the following.

**Substantive Facts and Procedural History**

{¶2} The first subject property is located at 9904 Anderson Avenue and the second at 12805 Grimsby Avenue. In 2013, both properties were cited for numerous housing codes violations. When Jaber failed to make the mandated repairs, the city filed two complaints against Jaber in the Cleveland Municipal Court Housing Division. Each complaint charged Jaber with failing to comply with notices of code violations pursuant to C.C.O. 3103.25(e), a first-degree misdemeanor. The complaint stated that "[e]ach day

during which noncompliance or a violation continues shall constitute a separate offense" pursuant to C.C.O. 3103.99(a). The complaint also cited C.C.O. 367.99(a). That section provides that each violation of the housing code is subject to a maximum fine of $1,000 dollars.

{¶3} At the plea hearing on April 14, 2015, Jaber appeared pro se. The city's counsel represented to the housing court that Jaber and the city had reached a plea agreement. In exchange for a no-contest plea, the city would recommend a $2,000 fine for the Grimsby property and a $4,000 fine for the Anderson property.

{¶4} After engaging in a plea colloquy with Jaber advising him of his rights, the court accepted Jaber's plea of no contest.

{¶5} After accepting the plea, the court heard from a city inspector, who reported that there was no improvement on the Anderson property since June 2013, when the first violation notice was issued. Regarding the Grimsby property, another city inspector reported that several, but not all, repairs were being carried out on the Grimsby property. The court heard from a community representative, a "Mrs. Kearsey," about the state of disrepair the property was in.

{¶6} A tenant at the Grimsby property also spoke. She and her husband moved from Florida to Cleveland because her husband was undergoing a triple transplant at the Cleveland Clinic. She rented the property because it was near the Cleveland Clinic. For the first two weeks, it had no hot water. Big chunks of the floor were missing in the

kitchen, among other problems. Mrs. Kearsey eventually helped her and her husband move out of the house and into a safe environment.

{¶7} The court allowed Jaber to speak at length regarding the conditions and repairs he made on the two properties. After the plea hearing, the court found Jaber guilty. The court ordered a presentence report for sentencing purposes, to be prepared by a housing court specialist, Alia Almashni.

{¶8} Almashni prepared two separate presentence reports, one for each property. For the Grimsby property, the report noted the violations included: deteriorated exterior walls, broken windows and doors, deteriorated front porch and stairway, cracked driveway, loose and weak floors, and broken light fixtures. Almashni observed that, as a result of the property's dilapidated appearance, there has been a decrease in the value of the adjacent properties. The report also included a statement from Westown Community Development Corporation that Jaber "is a slumlord who purchases many properties without taking care of them and fails to pay property taxes." The community organization recommended that "it is time for the Court to restrict him on purchasing any more properties, until all his properties are brought up to code."

{¶9} For the Anderson property, Almashni's report noted areas of neglect including broken windows, broken gutters and entry door, deteriorated front porch and stairway, peeling exterior foundation, and leaking garage roof. Almashni observed that the property was an eyesore to the community in that there was graffiti on the front door and trash and debris strewn in the yard. Several old trash bags were left outside, putting the

health of neighborhood residents at risk. The condition of the property encouraged criminal activity and presented a fire hazard. This property reduced real property values in the neighborhood, rendering an already struggling neighborhood even less appealing to prospective home buyers.

{¶10} The reports calculated the days of sustained noncompliance for the Grimsby property to be 86 days, for a maximum fine of $86,000. The Anderson property's days of noncompliance numbered 13 days, for a maximum fine of $13,000. The reports indicated Jaber was self-employed with an annual income of $1,500,000. Copies of the presentence reports, dated April 15, 2015, were sent to Jaber prior to the sentencing hearing held on April 28, 2015.

{¶11} At the sentencing hearing, a city inspector reported that the repairs on the Grimsby property were 90 percent completed on the exteriors but only 60 percent completed on the interior. A community representative spoke about the detrimental effect the dilapidated Grimsby property had on the businesses in the neighborhood. The housing court's own specialist who had prepared a presentence report informed the court that the Anderson property was still in a "terrible" condition. Although progress was made on the Grimsby property, the tenant who rented it for its proximity to the Cleveland Clinic described the house as inhabitable. Jaber himself spoke regarding the conditions of the properties and the repairs he made.

{¶12} The court then imposed the maximum fine: $1,000 for each day of non-compliance for the Grimsby property, which came to $86,000, and $13,000 for 13

days of noncompliance for the Anderson property. Further, the court imposed three years of community control. The court, however, allowed Jaber to request a substantial reduction of the fines when he brings the properties into full compliance of the housing code.

{¶13} Jaber was not represented by counsel either at the April 14, 2015 plea hearing or at the April 28, 2015 sentencing hearing. However, he obtained counsel within weeks of his sentencing hearing. Although he now claims on appeal that the trial court imposed fines well in excess of the recommended amount, his counsel did not file a direct appeal to challenge that, but instead, filed a motion to vacate his plea on May 22, 2015.

{¶14} The trial court denied his motion to vacate his plea. Jaber appealed from the court's decision.[1] On appeal, Jaber assigns two errors for our review.

{¶15} Under the first assignment of error, Jaber claims the trial court abused its discretion in denying his motion to vacate his plea of no contest.

**Postsentence Motion to Withdraw: Manifest Injustice**

{¶16} Crim.R. 32.1 states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

---

[1] Jaber filed two separate appeals from the court's decisions; 8th Dist. Cuyahoga No. 105194 relates to the Anderson case and 8th Dist. Cuyahoga No. 103195 relates to the Grimsby case. This court sua sponte consolidated the two appeals for oral argument and disposition.

**{¶17}** Unlike a presentence motion to withdraw a plea, which is to be freely and liberally granted, a postsentence motion must demonstrate the existence of manifest injustice. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992). Furthermore, a defendant seeking to withdraw a guilty plea after a sentence is imposed must support the allegation of manifest injustice with specific facts contained in the record or in affidavits submitted with the motion. *State v. Gegia*, 157 Ohio App.3d 112, 2004-Ohio-2124, 809 N.E.2d 673, ¶ 8 (9th Dist.). Whether a defendant has demonstrated a manifest injustice is addressed to the sound discretion of the trial court. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph two of syllabus.

**{¶18}** "Manifest injustice relates to some fundamental flaw in the proceedings which results in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Spivakov*, 10th Dist. Franklin No. 13AP-32, 2013-Ohio-3343, ¶ 10. A manifest injustice is alternatively defined as a "clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998). Under the manifest-injustice standard, the courts grant a postsentence motion to withdraw a plea only in extraordinary cases. *Smith* at 264. This is so because a defendant should not be encouraged to plead to test the potential punishment and withdraw the plea if the sentence is unexpectedly severe. *State v. Peterseim*, 68 Ohio App.2d 211, 213, 428 N.E.2d 863 (8th Dist.1980).

**{¶19}** Jaber claims his plea was not knowing or voluntary because the trial court's Crim.R. 11 colloquy was deficient. Specifically, he claims his plea was unknowing

because the trial court did not warn him before accepting his plea that he could be fined in excess of the prosecutor's recommendation.

{¶20} First, we note that in his motion to vacate his plea, Jaber did not make this claim — that his plea was not knowing or voluntary due to an insufficient Crim.R. 11 colloquy.[2]   As a reviewing court, we do not consider claims raised for the first time on appeal.   *See*, *e.g.*, *State v. Jones*, 8th Dist. Cuyahoga No. 99044, 2013-Ohio-3725, ¶ 21. *Even if* we were to review his claim, the claim is without merit, as we explain below.

{¶21} We recognize that, in order to ensure that a defendant enters a plea knowingly, voluntarily, and intelligently, the trial court must engage a defendant in a plea colloquy pursuant to Crim.R. 11.   *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25-26.   The underlying purpose of Crim.R. 11 colloquy is to convey to the defendant certain information so that he or she can make a voluntary and intelligent

---

[2]Rather than claiming his plea was unknowing, Jaber stated the following as grounds for his motion to vacate his plea:

> Defendant did not consent to any finding of guilty.   At the time Defendant made his plea there was additional evidence that needed to be presented to the Court concerning the charges against Defendant.   Additionally a hearing should have been held so that Defendant could provide mitigation of damages prior to assessments of fines in excess of $90,000.

The trial court found Jaber failed to demonstrate manifest injustice.   In response to the grounds cited by Jaber, the court explained that Jaber failed to particularize the nature of the additional evidence, and that his "consent" was not required before the court could find him guilty based on a plea of no contest.   Regarding a hearing over mitigation of damages, the court explained that Jaber's request of relief from the imposed sanctions did not require the court to vacate his plea. The court stated that Jaber would be permitted later to request a modification of the terms of his community control and the court would hold a hearing as needed.   On appeal, Jaber does not argue these issues

decision in the plea. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). Thus, Jaber's claim that his no-contest plea was not knowing or voluntary requires our review of the plea colloquy to determine whether the trial court met its obligation under Crim.R. 11 before accepting his plea. This begs the question of what the trial court's duty was under Crim.R. 11 before accepting Jaber's plea.

{¶22} "A trial court's obligations in accepting a plea depend upon the level of offense to which the defendant is pleading." *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 6. Crim.R. 11 sets forth distinct procedures, depending upon the level of the offense. The plea procedure for a felony case under Crim.R. 11 is much more elaborate than that for a misdemeanor case. Before accepting a plea in a felony case, a trial court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses. *Ballard* at paragraph one of the syllabus.

{¶23} The requirement under Crim.R. 11 is much less elaborate for a misdemeanor offense, which can be either a "serious offense" (defined as an offense the penalty for which includes confinement for more than six months), or a "petty offense" (defined as a misdemeanor other than a "serious offense"). [3] Crim.R. 11 has slightly different requirements for these two levels of misdemeanor. For a "serious offense," prior to

---

and, therefore, these issues are waived.

[3] *See* Crim.R. 2(C) and (D).

accepting a guilty or no-contest plea, the trial court shall "address[] the defendant personally and inform[] the defendant of the effect of the pleas of guilty, no contest, and not guilty and [determine] that the defendant is making the plea voluntarily." Crim.R. 11(D). For a "petty offense," the court "may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty." Crim.R. 11(E).

{¶24} Here, Jaber was charged with a first-degree misdemeanor offense, which is subject to a maximum sentence of 180 days. R.C. 2929.24(A)(1). Because the penalty does not exceed 180 days, the offense is a "petty offense." Consequently, the court's obligation under Crim.R. 11 was only to inform Jaber of the "effect" of his plea. *Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, at paragraph one of the syllabus.

{¶25} As the Supreme Court of Ohio explained, to advise a defendant the "effect of the plea" means to advise him or her the appropriate language under Crim.R. 11(B). *Id.* at paragraph two of the syllabus.

{¶26} Crim.R. 11(B) sets forth the effect of guilty or no-contest pleas. The effect of a no-contest plea is provided in Crim.R. 11(B)(2), which states:

> The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.

{¶27} Here, the trial court engaged in the following colloquy with Jaber prior to accepting his plea of no contest:

THE COURT:          * * * [D]o you wish to change your plea from not guilty to no contest?

MR. JABER: Yes, sir.

* * *

THE COURT:          * * * And you understand that when you plead no contest it's not an admission of guilt, but is an admission that the violations did exist. And the court will make a decision based upon what you say, the prosecutor and recommendation, and all other information available to the Court.

So we'll listen to what the outcome could be on these and make a decision. You'll be giving up your right to a jury trial; right against self-incrimination and your right for compulsory process.

So do you understand those rights and knowingly and willingly give them up?

MR. JABER:          Yes I   do.

THE COURT:          And do you wish to move forward without an attorney?

MR. JABER:          Yes.

THE COURT:          Okay.   I will accept the plea. * * *

{¶28} Our review of the transcript indicates the trial court fulfilled its obligations under Crim.R. 11(E) before accepting Jaber's plea of no contest to a petty offense. The court advised Jaber that pleading no contest was not an admission of guilt but an admission of what was alleged in the complaint — his violations of the housing codes. This advisement was all that was required of the trial court for a defendant pleading no contest to a petty offense pursuant to *Jones*, 8th Dist. Cuyahoga No. 99044,

2013-Ohio-3725. Although the trial court's wording slightly deviated from Crim.R. 11(B)(2), substantial compliance is sufficient for a valid plea when nonconstitutional rights were involved. *See*, *e.g.*, *State v. White*, 8th Dist. Cuyahoga No. 95098, 2011-Ohio-1562, ¶ 22.

**{¶29}** The trial court here in fact provided more than what was required of it for a valid plea regarding a petty offense — it also advised Jaber of the various constitutional rights he gave up by his plea. In addition, the court ensured that Jaber wished to go forward without counsel. Based on the record before us, the trial court fulfilled its obligation under Crim.R. 11.

**{¶30}** Jaber argues that his plea was not knowing or voluntary because the trial court imposed fines in excess of what the prosecutor had recommended without warning him of that possibility before accepting his plea. Jaber cites this court's decision in *State v. Dunbar*, 8th Dist. Cuyahoga No. 87317, 2007-Ohio-3261, to support his claim.

**{¶31}** In *Dunbar*, this court stated the following regarding the trial court's discretion in whether to accept a negotiated plea:

> "the law is somewhat less settled in those cases where the trial court appears to indicate that it accepts the negotiated plea agreement before the court accepts the defendant's plea, and then deviates from the recommended sentence or terms contained within the plea agreement at the time of sentencing. The analysis in these scenarios turns to due process concerns over whether the accused was put on [notice] that the trial court might deviate from the recommended sentence or other terms of the agreement before the accused entered his plea and whether the accused was given an opportunity to change or to withdraw his plea when he received this notice."

*Id.* at ¶ 115, quoting *Warren v. Cromley*, 11th Dist. Trumbull No. 97-T-0213, 1999 Ohio App. LEXIS 206, *7-8 (Jan. 29, 1999). Applying *Cromley*, this court noted that the record was unclear as to whether the trial court accepted the plea agreement, which had recommended community control sanctions instead of prison, before accepting Dunbar's guilty plea. This court stated that a review of the record in its entirety, however, indicated that Dunbar had a reasonable expectation that the trial court would adopt the recommended punishment and impose community controls instead of a prison term. This court therefore concluded the trial court should not have deviated from the recommended community control sanctions without forewarning the defendant of the potential punishment of prison at the plea hearing. The plea was therefore invalid.

**{¶32}** The present case is distinguishable from *Dunbar*. The defendant there pleaded guilty to a *felony* offense. As the Supreme Court of Ohio noted in *Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, the procedure set forth under Crim.R. 11(C) for felony cases is more elaborate than for misdemeanors. The required colloquy for a felony included advising the defendant the maximum penalty involved. Crim.R. 11(C)(2)(a). In contrast, in a plea to petty offenses, the court's Crim.R. 11 duty in ensuring a knowing and voluntary plea is limited to advising the defendant of the "effect of the plea" set forth in Crim.R. 11(B)(2). *Jones*. Furthermore, our review of the plea transcript in its entirety shows that before accepting Jaber's plea, the court gave *no* indication that it would accept the recommended penalty. *Dunbar* is distinguishable for these reasons.

**{¶33}** The complaints against Jaber put him on notice that each day of noncompliance constituted a separate offense and each offense was subject to a maximum of $1,000 fine. During the Crim.R. 11 colloquy, the trial court gave *no* indication and no hint or promise that it would adopt the recommended fines. Rather, the court advised Jaber that it would ultimately make a decision based on his statements, the recommendation, and "all other information" available to the court. The presentence reports that were sent directly to Jaber clearly set forth the potential maximum fines he faced. He did not, though, move to vacate his plea prior to sentencing. Given these circumstances, Jaber fails to demonstrate that his plea was unknowing or involuntary. Reviewing the trial court's decision denying the postsentence motion to vacate a plea under the "manifest injustice" standard, we do not find that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). The first assignment of error is without merit, *even if* it had been properly raised.

**{¶34}** The second assignment of error states:

> The trial court abused its discretion by not vacating the judgment when the trial court improperly permitted prejudicial testimony at the sentencing from non-victim Mrs. Kearsey.

**{¶35}** Jaber claims the trial court should have vacated his plea because it improperly considered the testimony of the community representative at the sentencing hearing.

**{¶36}** "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was *represented by counsel* from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." (Emphasis added.) *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996), syllabus.

**{¶37}** The sentencing issue Jaber raises in this appeal could have been brought on a direct appeal. We note that, although Jaber was unrepresented at trial, he did obtain counsel within the 30-day period for direct appeal. Because he *was* represented during the period in which the sentencing issue could have been raised on a direct appeal, his claim of sentencing error is barred by res judicata. *See State v. Carnail*, 8th Dist. Cuyahoga No. 78143, 2001 Ohio App. LEXIS 559, *4-5 (Feb. 15, 2001) (res judicata does not bar a claim where a defendant was unrepresented by counsel during the period in which the claim could have been raised on direct appeal).

**{¶38}** We decline to review the purported sentencing error for yet another reason. In Jaber's motion to vacate his plea filed by counsel, Jaber did not allege the impropriety of the community representative's testimony as a ground for his motion. We decline to consider this sentencing claim raised for the first time on appeal.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

LARRY A. JONES, SR., A.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION ATTACHED);
ANITA LASTER MAYS, J., CONCURS IN JUDGMENT ONLY WITH LEAD OPINION AND CONCURS WITH SEPARATE OPINION OF LARRY A. JONES, SR., A.J.

LARRY A. JONES, SR., A.J., CONCURRING IN JUDGMENT ONLY:

{¶40} I concur in judgment only and write separately to discuss what, I believe, the trial court should have done when accepting Jaber's plea.

{¶41} I agree with the lead opinion that Jaber has waived the issues he raised on appeal because he did not raise them at the trial court level. But Jaber was a pro se defendant. As such, the better course of action would have been for the trial court to expressly inform Jaber that the court was not bound by the prosecutor's recommendation as to the fine it could impose. While such notice was not required, one cannot ignore the

fact that the prosecutor recommended a fine of $6,000 and the court imposed a fine of $99,000, a difference of $93,000.

{¶42} There is little doubt that Jaber's properties were in inexcusable and deplorable condition and contributed to the scourge of blight that has beset the city of Cleveland. Jaber's $1.5 million annual income may allow him to pay the fine with ease; moreover, the court offered to revisit the fine once repairs were completed. But what about the average property owner? While the trial court's harsh penalty may serve to deter prospective "slumlords," and the trial court was within its discretion in deviating from the recommended fine, I maintain that justice would have been better served had the trial court told Jaber at the plea hearing that it was not bound by the prosecutor's recommendation.