[Cite as *State v. Fluhart*, 2021-Ohio-2153.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-12-069 |
| | : | O P I N I O N |
| - vs - | | 6/28/2021 |
| | : | |
| LYLE W. FLUHART, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2020 CRB 1149

Mark J. Tekulve, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

Amanda Kuhn, 7673 Kennesaw Drive, West Chester, Ohio 45069, for appellant

**HENDRICKSON, J.**

{¶1} Appellant, Lyle Fluhart, appeals his convictions in the Clermont County Municipal Court following his no contest pleas to four counts of cruelty to companion animals and two counts of cruelty to animals. For the reasons detailed below, we affirm Fluhart's convictions.

{¶2} In January 2020, dozens of animals were found in a state of neglect at

Fluhart's residence in Bethel, Ohio. According to the complaint, upon arrival, deputies with the Clermont County Sheriff's Department discovered that the inside and outside of the home were completely littered with bags of trash, empty cat litter containers, and horse feces. There were 11 German Shepherds inside the home in cages that were coated with dried feces and matted newspaper. There was no food, water, or any form of bedding. Many of the German Shepherds were extremely thin, weak, and near death. Two German Shepherds were found dead and decomposing.

{¶3} On March 30, 2020, Fluhart was charged with 11 counts of cruelty to companion animals and six counts of cruelty to animals. Fluhart initially retained private counsel. The trial court set a $20,000 own recognizance bond with conditions that he report to the jail for fingerprinting and that he would not possess any companion animals or livestock. Fluhart subsequently requested that his counsel withdraw from the case on July 24, 2020. The trial court granted the motion to withdraw and Fluhart proceeded pro se. Though Fluhart requested substitute counsel, the trial court found that Fluhart was not indigent and could employ his own counsel.

{¶4} On September 18, 2020, the state moved to revoke Fluhart's bond, alleging that he violated the conditions of his bond by having a cat in his home. During the bail revocation hearing, Chief Dog Warden Milem testified that when he arrived at Fluhart's home, he knocked on the door, identified himself, and informed Fluhart that he had received an anonymous tip that he had a companion animal inside the home. As Chief Milem was explaining this, he saw a gray cat standing directly behind Fluhart. Chief Milem then told Fluhart that he needed to conduct a welfare check on the animals, but Fluhart told him to go away and slammed the door in his face. While still at the residence, Chief Milem noticed that several food and water bowls had been left out on Fluhart's front porch. Fluhart chose not to cross-examine Chief Milem but did present a procedural argument as to Chief Milem's

authority.  Following the hearing, the trial court revoked Fluhart's bond, imposed a cash or professional bond, and Fluhart was then taken into custody.

{¶5}    On October 7, 2020, Fluhart appeared before the court for purposes of a plea. The trial court noted that Fluhart had since been reinterviewed by the public defender to determine his eligibility for representation as a result of his incarceration.  Finding now that Fluhart was eligible for appointed counsel, the trial court appointed the public defender as his counsel.  Since counsel had just been appointed, the trial court engaged in a colloquy with Fluhart to determine if he felt he had adequate time with his counsel to make a decision on the plea:

> THE COURT: Okay. First, I want to ask you, Mr. Fluhart, I just…[Fluhart's trial counsel] has just started representing you.
>
> [FLUHART]: Correct.
>
> THE COURT: Just today.  So do you feel like you've had adequate discussions with her and adequate time to make that decision to enter into a plea?
>
> [FLUHART]: I, I would reckon with what's relevant, yes.
>
> THE COURT: Okay.  Okay. Same to you, [Fluhart's trial counsel], do you feel like you were able to acquaint yourself with the case enough that you were able to properly advise Mr. Fluhart today?
>
> [FLUHART'S TRIAL COUNSEL]: Yeah, Judge, I do.  And we did discuss that fact that certainly I have not been provided discovery and there is a lot of information that I don't have.  And that all I would have to go on is our discussions and that he may not feel comfortable with that.  But I think, I believe I answered any questions that he had about what we're doing today and I think he's okay to go forward.
>
> THE COURT:  Okay.  And, Mr. Fluhart, you understand that if you wanted more time to speak to your attorney about the charges, about the discovery, things of that nature, that the Court would provide with [sic] that time if you wanted it?
>
> [FLUHART]: I understand.

- 3 -

THE COURT: And know that it's your wish to go forward with the plea?

[FLUHART]: Yes.

{¶6} Thereafter, the trial court outlined the details of the plea agreement. The trial court went on to explain that, while it would consider the joint recommendation of sentencing of 60 days in jail of which 15 days would be converted to house arrest, it was not bound by the terms and the court had independent authority to impose a sanction.

{¶7} The trial court then engaged in a colloquy with respect to Fluhart's plea of no contest.

THE COURT: Okay, the pleas would be no contest, correct?

[FLUHART'S TRIAL COUNSEL]: Correct.

THE COURT: Okay. Mr. Fluhart, do you understand that pleas of no contest to these charges, it's eight charges correct?

[THE STATE] Six.

[FLUHART'S TRIAL COUNSEL]: Six.

THE COURT: Six charges. Pleas of no contest to these six charges would not be admissions of guilt. They would be complete admissions to all the facts alleged in each complaint. And your pleas of no contest could not be used against you in any later civil or criminal proceeding. Do you understand that?

[FLUHART]: Could you say that again? I'm trying to process all of this. I'm having a hard time with it.

THE COURT: That's okay, Mr. Fluhart. I'm just ex…now I'm just going to make sure you understand what's going on with the plea.

* * *

[FLUHART'S TRIAL COUNSEL]: Are we talking about the no contest, what that means?

[FLUHART]: Right.

- 4 -

[FLUHART'S TRIAL COUNSEL]: Yeah. What I was suggesting that like if some, there would be a pursuit by say the animal (inaudible) for restitution.

[FLUHART]: Oh, okay. All right, I do.

[FLUHART'S TRIAL COUNSEL]: They can't use that. (Inaudible).

[FLUHART]: Yes, Your Honor, I do. Yeah, I understand now. Yeah, all right.

THE COURT: Okay, so after talking to [Fluhart's counsel]…

[FLUHART'S TRIAL COUNSEL]: We did talk it through, Judge.

THE COURT: …you, you feel comfortable, you understand what a no contest plea is?

[FLUHART]: Correct.

THE COURT: Okay and you would be entering a no contest plea for each of those charges.

[FLUHART]: Correct.

THE COURT: Which means that it is not an admission of guilt but it is a complete admission to the facts alleged in each complaint. And it could not be used against you in a later civil or criminal proceeding. You understand that now?

[FLUHART]: Correct.

THE COURT: Okay and you understand on each charge, because they're each misdemeanors of the first degree.

[PROSECUTOR]: The first counts, A through B [sic] are first degree counts. P and Q are second degree.

THE COURT: A through D are misdemeanors of the first degree. Thank you. P and Q are misdemeanors of the second degree. On the charges, the A through D charges, A, B, C, and D, misdemeanors of the first degree, Mr. Fluhart, do you understand if I accept your no contest pleas and make guilty findings, on each charge I could sentence you to serve up to 180 days in the Clermont County Jail. I could order that you pay a fine up to $1,000 on each charge. I could place you on community control. It could be up to five years. It could be reporting or non-reporting with a number of different conditions

- 5 -

you would have to fulfill. Do you understand those are all possible consequences of your plea?

[FLUHART]: Yes, sir.

THE COURT: Knowing those possible consequences is it still your wish to enter pleas of no contest to each of those four charges.

[FLUHART]: I wish to carry on. Yes, sir.

* * *

THE COURT: Has anyone placed any pressure on you to enter any of those pleas?

[FLUHART]: No.

THE COURT: Okay.

[FLUHART]: Not at all.

THE COURT: Then, Mr. Fluhart, with respect to the charges, the P and Q charges, the cruelty to animals in violation of 959.13(A)(4) of the Ohio Revised Code, those are misdemeanors of the second degree. On those cases if I accept your no contest pleas and make guilty findings on each I could order that you serve up to 90 days on the Clermont County … in the Clermont County Jail. I could order that you pay a fine of up to $750 on each. And on each I could order that you serve five years, up to five years community control. It could be reporting or non-reporting with a number of different conditions you'd have to fulfill. Do you understand those are all possible consequences of your pleas of no contest to those two charges?

[FLUHART]: No contest to that. Yes, sir.

THE COURT: Knowing that, sir is it still your wish to enter pleas of no contest…

[FLUHART]: Yes.

THE COURT: …to those two charges?

[FLUHART]: Yes.

THE COURT: Has anyone placed any pressure on you to enter either of those pleas?

[FLUHART]: No.

THE COURT: And, Mr. Fluhart, I want you to be aware that I could run the sentences on these charges consecutively which would expose you to a possibility of, in municipal court the longest that a Judge could sentence you is 540 days in the Clermont County Jail. Do you understand that is a possibility?

[FLUHART]: Yes.

THE COURT: Knowing that it's still your wish to enter those pleas of no contest?

[FLUHART]: Yes.

THE COURT: Okay. Then to the A charge that is 20 CRB 1149(A), the charge of cruelty to companion animals in violation of section 959.131(B) of the Ohio Revised Code, a misdemeanor of the first degree, Mr. Fluhart, what is your plea?

[FLUHART]: No contest

THE COURT: I will accept your no contest plea. I find it was knowingly, voluntarily and intelligently entered by you. Would you give me a reading of the facts on that case?

{¶8} Thereafter, the state read a summary of the facts alleged in the complaint for each of the four charges for cruelty to a companion animal. After each count was read, the trial court asked Fluhart if the facts read into the record were true, which Fluhart affirmed were true. The state then also read a summary of facts for the two charges of cruelty to animals. Again, the trial court asked Fluhart to confirm whether the facts alleged by the state were true, which Fluhart responded by confirming the truth of the facts read by the state. Thereafter, the trial court announced that the facts were sufficient to find Fluhart guilty on all six counts. The trial court then ordered a presentence-investigative report ("PSI").

{¶9} The record reflects that Fluhart was noncooperative in the process of completing the PSI by failing to provide his probation officer with the full report of a mental health assessment provided while he was in jail. According to the PSI, Fluhart suggested

- 7 -

that he would provide that information if granted reporting community control. During the interview process for the PSI, Fluhart claimed that he did not remember the instant offenses due to his declining physical health. He also refused to acknowledge the deprivation he placed on the animals.

{¶10} During the sentencing hearing, Fluhart denied any intentional wrongdoing and, again, attributed the condition of his home and his care of the animals to his own physical limitations. In sentencing him, the trial court stated that it had considered the overriding purposes and principles of misdemeanor sentencing, as well as the information contained in the PSI.

> I turn to the instant case, the instant offense, it's the worse [sic] case of animal cruelty case I've ever seen during my time on the bench and before that as a prosecutor. The horses that were your horses had no room to walk because manure was piled up to their enclosure. They had no access to shelter because they couldn't gain access into the barn. Their hooves were cracked. They had worm bellies. They had nothing to eat. They had no water to drink. You had dogs living in a basement with no light, no fresh air. You hadn't allowed them out of their cages for weeks. Those are German shepherds. They're smart dogs. They know what, they know exactly what's going on. It was putrid smelling. They were living on top of their own feces. They were malnourished with sores and matted hair. When two of them died you pulled them from their cages and let them rot in front of the other dogs.
>
> * * *
>
> When confronted with all this in the PSI and Officer Hickman asked you many questions you took absolutely no responsibility. You blame it all on your medical issues. You have selective amnesia. You remember in great detail certain things from that period of time, including your medical conditions you blame all of your ridiculous behavior on. But you don't remember torturing these dogs, leaving them to rot. I don't understand really how a grown man could treat another living creature the way you treated them. It made me question your mental health which is why I ordered the PSI. It's why I ordered an assessment through Greater Cincinnati Behavioral Health. And when I get the PSI I hear that you won't sign the waiver for probation to review all of their recommendations. You're obstinate. You're not a good

candidate for probation.

{¶11} After considering all the facts and circumstances, the trial court then imposed a cumulative jail term of 510 days in the Clermont County Jail. Fluhart now appeals, raising five assignments of error for review.

{¶12} Assignment of Error No. 1:

{¶13} THE TRIAL COURT ERRED IN FINDING MR. FLUHART GUILTY OF THREE COUNTS OF CRUELTY TO COMPANION ANIMALS PROHIBITIONS AND TWO COUNTS OF CRUELTY TO ANIMALS PROHIBITIONS WHERE MR. FLUHART NEVER FORMALLY TENDERED A PLEA TO THOSE COUNTS.

{¶14} In his first assignment of error, Fluhart argues that his plea was deficient in that he did not actually plead no contest for three of the counts of cruelty to companion animals. Rather, focusing on a duplicative portion of the record, Fluhart alleges that he only pled no contest to one count of cruelty to companion animals, yet failed to or did not wish to enter into no contest pleas on the remaining three counts. We find Fluhart's argument is without merit.

{¶15} "A trial court's obligations in accepting a plea depend upon the level of offense to which the defendant is pleading." *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, ¶ 6. The plea procedure for a misdemeanor case under Crim.R. 11 is much less elaborate than the procedure for a felony case. *Cleveland v. Jaber*, 8th Dist. Cuyahoga Nos. 103194 and 103195, 2016-Ohio-1542, ¶ 23. Misdemeanor cases can involve "serious offenses" or "petty offenses." A "serious offense" is defined as an offense for which the penalty includes confinement for more than six months; a "petty offense" is defined as a misdemeanor offense other than a serious offense. *Id.*, citing Crim.R. 2(C) and (D). Crim.R. 11(E) provides that for a "petty offense," the trial court "may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect

- 9 -

of the plea of guilty, no contest, and not guilty."

{¶16} According to Crim.R. 11(B)(2), "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." *State v. Daly*, 12th Dist. Clermont No. CA2015-06-054, 2015-Ohio-5034, ¶ 16; *Cleveland v. O'Donnell*, 8th Dist. Cuyahoga No. 105597, 2018-Ohio-390, ¶ 11.

{¶17} In this case, Fluhart was charged with first-and-second-degree misdemeanor offenses, subject to a maximum sentence of 180 days or 90 days, respectively. R.C. 2929.24(A)(1); R.C. 2929.24(A)(2). Accordingly, Fluhart's offenses were "petty offenses," and Crim.R. 11 only obligated the trial court to inform appellant of the effect of his plea. *Jones*, at paragraph one of the syllabus. "To satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B)." *Id.*, at paragraph two of the syllabus.

{¶18} Upon review of the record, we find that Fluhart entered into valid no contest pleas to four counts of cruelty to companion animals and two counts of cruelty to animals and, further, that those pleas were entered knowingly, intelligently, and voluntarily. Though we acknowledge that the trial court was repetitious, giving rise to Fluhart's claim that he only entered a no contest plea as to one count, when the colloquy is considered in its entirety, the record reflects that Fluhart did, in fact, enter valid no contest pleas for all six counts.

{¶19} In the present case, the trial court appropriately explained the consequences of a no contest plea. Fluhart asked some questions but following communication with his counsel and more explanation by the trial court, he affirmatively stated that he understood the consequences of a no contest plea. Fluhart indicated that he felt comfortable in entering

a no contest plea and that he wished to "carry on" in entering his no contest pleas to the four first-degree misdemeanor charges and, again, confirmed his desire to plead "no contest" to the second-degree misdemeanor charges. Fluhart advised that he did so willingly and that nobody had placed any pressure on him in entering those pleas. When the trial court reminded him that it could sentence him up to 540 days in jail, on all charges, Fluhart confirmed his desire to plead no contest. Though the trial court went on to address "Charge A," Fluhart's no contest plea was merely duplicative. There is no doubt that Fluhart intended to and, in fact, did plead no contest to all six of the charges of which he was ultimately convicted. Thereafter, the state read into evidence the factual basis for each offense, which Fluhart confirmed, for all six offenses, were true statements. After confirming the statement of facts, the trial court appropriately entered guilty findings for all six offenses. Accordingly, we find Fluhart's first assignment of error is without merit and is overruled.

{¶20} Assignment of Error No. 2:

{¶21} THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. FLUHART IN SENTENCING HIM TO FIVE-HUNDRED AND TEN DAYS IN JAIL.

{¶22} In his second assignment of error, Fluhart argues the trial court erred by sentencing him to 510 days in jail. In so doing, Fluhart acknowledges that the trial court was not bound by a plea agreement between him and the state, which would have been an agreed sentence of 60 days in jail with the last 15 days converted to house arrest. Nevertheless, Fluhart argues that the trial court abused its discretion in imposing the 510-day sentence because of his lack of criminal record, age, low score for recidivism, and serious health problems that plague his life. We find Fluhart's argument to be without merit.

{¶23} We review a trial court's sentence on a misdemeanor violation under an abuse of discretion standard. *State v. Jezioro*, 12th Dist. Warren No. CA2016-10-088, 2017-Ohio-2587, ¶ 6. An abuse of discretion connotes more than an error in law or judgment; it implies

that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Sanchez-Garza*, 12th Dist. Butler CA2016-02-036, 2017-Ohio-1234, ¶ 33.

{¶24} Pursuant to R.C. 2929.21 and 2929.22, trial courts have broad discretion when determining what sentence is appropriate for each given misdemeanor case. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-060, 2014-Ohio-2238, ¶ 30. When determining the appropriate sentence, the trial court must be guided by the purposes of misdemeanor sentencing which are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). The trial court must also consider the factors listed in R.C. 2929.22(B)(1), including the nature and circumstances of the offense, and may consider any other factors that are relevant to achieving the purposes and principles of misdemeanor sentencing. R.C. 2929.22(B)(2). *State v. Fisher*, 12th Dist. Clermont No. CA2019-10-080, 2020-Ohio-3764, ¶ 11.

{¶25} The trial court is not required to make consecutive sentence findings under R.C. 2929.14(C)(4) prior to ordering consecutive sentences for jail terms imposed for misdemeanor offenses. *State v. Prickett*, 12th Dist. Butler No. CA2017-01-010, 2017-Ohio-8128, ¶ 24. That statute is instead reserved for circumstances where the trial court imposes consecutive sentences for prison terms imposed for felony offenses. *State v. Henson*, 12th Dist. Clermont No. CA2020-07-037, 2021-Ohio-38, ¶ 17. The trial court need only "specify" that the jail terms being imposed were to be served consecutively. *Id.*

{¶26} After a thorough review of the record, we find no error in the trial court's decision to sentence Fluhart to serve 510 days in jail for the four first-degree misdemeanor offenses and two second-degree misdemeanor offenses.[1] The sentence imposed for each offense falls within the statutory limits for first-and-second-degree misdemeanor offenses.

---

1. Fluhart was sentenced to 110 days in jail for each first-degree misdemeanor offense. He was also sentenced to 40 days and 30 days, respectively, on each second-degree misdemeanor offense.

R.C. 2929.24(A)(1) (the maximum jail term a trial court can impose for a first-degree misdemeanor offense is 180 days); R.C. 2929.24(A)(2) (the maximum jail term a trial court can impose for a second-degree misdemeanor offense is 90 days). The trial court ordered that each term be served consecutively.

{¶27} There is no affirmative indication that the trial court failed to consider the factors contained in R.C. 2929.21 and 2929.22 and therefore the trial court is presumed to have complied with both statutes prior to issuing its sentencing decision. *Jezioro*, 2017-Ohio-2587 at ¶ 10. Moreover, the trial court specifically noted that it had considered the purposes of misdemeanor sentencing, which are to punish the defendant and protect the public. The trial court specifically addressed the severity of the offense as reason for imposing the sentence. In this case, the dogs had been left in their cages for long periods of time with no access to fresh air, light, or exercise. The cages were covered in feces and the dogs were malnourished with matted hair. When law enforcement arrived, the dogs had no food or water. Some dogs were so abused that they were unable to walk. Two dogs perished and were left to decompose in front of the surviving dogs. The horses found on Fluhart's property were very underweight, had no access to food or water, had cracked hooves, and had no access to shelter or exercise because their exits were blocked by manure.

{¶28} Though Fluhart had a low risk to reoffend based solely on the ORAS score taken during the PSI, the trial court cited other factors in the record that indicated a likelihood of recidivism. For example, the record reflects that Fluhart demonstrated a clear resistance to authority. Fluhart had two conditions of bond: (1) be fingerprinted and (2) do not possess any companion animals or livestock. However, when Chief Milem went to inspect Fluhart's property, he discovered that Fluhart defied these orders by keeping a cat in the home and had put food and water on the front porch. When Chief Milem attempted to have Fluhart

account for the cat, Fluhart brazenly denied the existence of the cat and questioned the chief's authority. As correctly found by the trial court, there is nothing about Fluhart's actions and history that evince any confidence that he would respond favorably to community control. Though Fluhart cites mitigation and issues with his health and age, we find the record supports the trial court's sentencing decision. As a result, we find the trial court did not abuse its discretion in sentencing Fluhart to 510 days in jail. Fluhart's second assignment of error is overruled.

{¶29} Assignment of Error No. 3:

{¶30} COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTIONS [sic] RELATING TO THE UNCONSTITUTIONALITY OF THE RAID UPON AND SEIZURE OF ANIMALS FROM MR. FLUHART'S HOME.

{¶31} Assignment of Error No. 4:

{¶32} COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY OBTAIN AND REVIEW DISCOVERY AND DISCUSS ALL ASPECTS OF THE CASE WITH MR. FLUHART THUS RENDERING HIS PLEA INVOLUNTARY.

{¶33} Because they are interrelated we will address Fluhart's third and fourth assignments of error together. In his third and fourth assignments of error, Fluhart alleges that he received ineffective assistance of counsel because his trial counsel failed to file a motion relating to the raid of his home and also failed to obtain and review discovery and discuss the case more fully with him. We disagree.

{¶34} To establish a claim of ineffective assistance of counsel, the appellant must show that counsel's actions were outside the wide range of professionally competent assistance and that he was prejudiced as a result of counsel's actions. *State v. Patrick*, 12th Dist. Butler No. CA2015-05-090, 2016-Ohio-995, ¶ 13, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of a no contest or guilty plea, prejudice will not be

found unless a defendant demonstrates there is a reasonable probability that, if not for counsel's errors, he would not have entered the plea. *State v. Tribune*, 12th Dist. Warren No. CA2016-04-027, 2017-Ohio-1407, ¶ 7; *State v. Blair*, 3d Dist. Paulding Nos. 11-20-01 and 11-20-02, 2021-Ohio-266, ¶ 34.

{¶35} As previously noted, Fluhart initially retained private counsel for his defense, but later requested that they withdraw from the representation. Fluhart was not eligible for appointed counsel until his bond was revoked. After he was reinterviewed by the public defender, he was appointed an attorney. Despite the new representation, Fluhart chose to proceed with his no contest plea at the October 7, 2020 hearing. As noted above, the trial court engaged in a lengthy colloquy with Fluhart to determine if he had adequate time with his counsel to decide on the plea.

{¶36} This court has considered arguments alleging ineffective assistance of counsel in a similar setting. In *Tribune*, the record supported the defendant's claim that his attorney had not reviewed the evidence prior to his guilty plea. *Tribune*, 2017-Ohio-1407 at ¶ 8. However, the reasons for that failure were fully provided in the record and did not support a claim of ineffective assistance of counsel. *Id.* As the record indicated, Tribune and his trial counsel were present for a pretrial hearing when the trial court noted that the parties had entered into a plea agreement. *Id.* During the hearing, Tribune's trial counsel noted that he had not reviewed the state's evidence and had advised Tribune that there may be potential defenses to his case. *Id.* Still, Tribune proceeded with a guilty plea. *Id.* As Tribune's trial counsel stated on the record:

> [TRIAL COUNSEL]: Your Honor, may I make a statement at this time? I want to make a record of the fact that I have not reviewed the evidence against my client. I explained that to him.

> THE COURT: You have not?

> [TRIAL COUNSEL]: I have not. And I also explained to him that

I thought we should at least give a Motion to Suppress a shot, and he and I talked about that. It's not customary to plead as charged in a situation like this without being offered anything at all. He certainly has nothing to lose by going to trial and we talked about that. So I want the record to be clear, you know, my standpoint what would [sic] I tried to do as far as Mr. Tribune.

Now, he explained to me that he felt that he committed the crime and he wants to get it going as quickly as possible. And that's why we are here.

THE COURT: Well, I think I'm going to do something that accomplishes both objectives. Have you provided discovery,

[Prosecutor]?

[PROSECUTOR]: Yes, Your Honor.

[TRIAL COUNSEL]: Okay. I'm going to accept the plea at this time. I'll make a finding of guilty. During this pre-sentence investigation it takes a little time for them to get over to interview him. If you want to go over and go over the evidence with him on this and if he reconsiders, then I'm going to give you an opportunity to withdraw your plea. It's going to toll time for sure, but if you go over the evidence with him and he sees that he has a case that or a defense in this case, then we'll reconsider it at that time.

*Id.* Tribune did not attempt to withdraw his guilty plea and the matter proceeded to sentencing. *Id.*

{¶37} This court found that the record did not support Tribune's claim of ineffective assistance. *Id.* at ¶ 9. In so doing, we noted that, "[w]hile an attorney's failure to review evidence in a case would ordinarily be problematic, the record establishes that the guilty plea was done entirely on Tribune's own accord." *Id.* That is, Tribune's counsel candidly admitted that he had not yet reviewed the evidence and had advised his client of the charges and potential defenses. *Id.* Still, the record reflected that Tribune's "decision to plead guilty was fully his own, untainted by ineffective assistance of counsel, and there is no evidence to suggest that Tribune would not have pled guilty under different circumstances." *Id.*

{¶38} We believe the circumstances in this case are like those in *Tribune* and therefore conclude that Fluhart did not receive ineffective assistance of counsel. Here, the trial court understood that Fluhart had just been appointed counsel and therefore engaged in a colloquy to determine if he wished to continue with the plea. Fluhart confirmed that he wished to go forward with the plea and his trial counsel confirmed they had discussed the case even though she candidly admitted she had not yet been provided discovery and was missing information. The trial court then advised Fluhart that he would be provided more time with his counsel if he wished and Fluhart confirmed he understood. Fluhart then confirmed his desire to go forward with the plea. As in *Tribune*, we find Fluhart's decision to go forward with the plea was fully his own decision, untainted by ineffective assistance of counsel. Moreover, even if this case were unlike *Tribune*, we would still find that Fluhart's counsel was not ineffective. Fluhart's arguments concerning the motion to suppress are, at best, wildly speculative. We also note that Fluhart's counsel was able to negotiate a plea to six counts from the 17 original counts. There is simply no indication that Fluhart's counsel was deficient in the performance of her duties. As a result, we find Fluhart's trial counsel was not ineffective for failing to file a motion relating to the raid or by failing to obtain and review discovery and discuss the case more fully with Fluhart. Rather, the record reflects that Fluhart was advised that he could utilize his attorney's services more fully, but instead chose, by his own volition, to go forward with his no contest pleas. As a result, Fluhart's third and fourth assignments of error are overruled.

{¶39} Assignment of Error No. 5:

{¶40} COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY PRESENT MITIGATION ON BEHALF OF MR. FLUHART AT SENTENCING.

{¶41} In his fifth assignment of error, Fluhart alleges his trial counsel was ineffective for failing to adequately present mitigation on his behalf during the sentencing hearing. We

find no merit to this argument.

{¶42} As noted above, to establish a claim of ineffective assistance of counsel, the appellant must show that counsel's actions were outside the wide range of professionally competent assistance and that he was prejudiced as a result of counsel's actions. *Patrick*, 2016-Ohio-995 at ¶ 13.

{¶43} Following review of the record, we find that Fluhart's trial counsel was not ineffective in her representation of Fluhart during the sentencing hearing. While Fluhart asserts that he would not have received such a long sentence but for his trial counsel failing to present better mitigation at the sentencing hearing, the record indicates otherwise. Fluhart's trial counsel advocated on his behalf and specifically addressed his deteriorating health in mitigation, including that he had several surgeries, blood poisoning, and several amputations. Fluhart's trial counsel also argued that Fluhart did not have an extensive criminal history and would comply with any conditions imposed by the court. Fluhart's counsel also addressed his alleged noncompliance with releasing his mental health assessments and explained that he would comply with any conditions imposed by the court.

{¶44} Despite trial counsel's argument, the trial court noted several aggravating factors in this case and emphasized the horrendous conditions of the home and the harm to the animals. Appellant also violated the conditions of his bond by possessing an animal and refused to release information about his mental health for preparation of the PSI. The trial court's 510-day sentence was based upon full consideration of the purposes of misdemeanor sentencing and warranted based on the facts and circumstances of this case. In other words, Fluhart has not shown that the results of his sentence would have been different but for counsel's performance. *See, e.g., State v. McIntosh*, 12th Dist. Butler Nos. CA2006-03-051 and CA2006-10-282, CA2007-10-241, 2008-Ohio-5540, ¶ 41 ("even if counsel's failure to offer mitigating arguments amounted to deficiency under *Strickland*, we

are unable to say that [the defendant] was prejudiced because nothing on the record indicates that the trial court would have sentenced [him] any differently than it did had counsel offered mitigating circumstances"). As such, Fluhart did not receive ineffective assistance of counsel and his fifth assignment of error is hereby overruled.

{¶45} Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.